## FARM BUREAU MUTUAL INSURANCE COMPANY of Missouri, a corporation (Plaintiff) Appellant,

v.

## FARMERS MUTUAL AUTOMOBILE INSURANCE COMPANY OF MADISON, WISCONSIN, a corporation (Defendant) Respondent.

No. 31093.

St. Louis Court of Appeals.

Missouri.

Sept. 18, 1962.

Roberts & Roberts, J. Richard Roberts, Farmington, for appellant.

Hartman, Guilfoil & Albrecht, St. Louis, for respondent.

MARSHALL CRAIG, Special Judge.

This action was commenced in the trial court on a "Petition for a Declaratory Judgment." The parties will be referred to as designated in the trial court, that is, plaintiff and defendant. Many of the issues were joined by an agreed statement of facts, which was as follows:

"STIPULATION OF FACTS.

"1. On or about the 5th day of August, 1958, Edward Wallach owned and farmed a certain tract of farm land on Missouri Highway W in Jefferson County, Missouri, and also farmed another tract of land on said highway, on a lease basis, which was located across the highway from the first parcel and one-half mile down said road.

"2. The said Edward Wallach raised a crop of lespedeza during the summer of 1958 on the tract of ground leased by him. In connection with the raising of such a crop, it was necessary to make hay on said land once during the summer.

"3. On or about August 5, 1958, Edward Wallach was engaged in this haying operation with the crop of lespedeza on said leased tract. At that time, Edward Wallach owned a 1948 International 1½ ton stake body truck, which was being used in this field in connection with this operation.

"4. Helping in this haying operation, among others, was Glenwood Allen, also known as Arthur Glenwood Allen. This boy was personally contacted by Wallach for this purpose. It was further agreed that he was to receive $1.00 per hour for each hour that he was so engaged in this operation.

"5. At the time of the occurrence, Edward Wallach was the named insured under a policy of insurance covering his farming operations which was in full force and effect. Said policy was identical to the policy of insurance marked Exhibit A and attached hereto, issued by the plaintiff, Farm Bureau Mutual Insurance Company of

Missouri, and which Exhibit is made a part of this stipulation.

"6. At the time of the occurrence Edward Wallach was also the named insured under a policy of liability insurance issued by the defendant, Farmers Mutual Automobile Insurance Company of Madison, Wisconsin, which policy covered the aforesaid 1948 truck and which was in full force and effect on August 5, 1958. Said policy was identical to the policy of insurance marked Exhibit B attached hereto, and said Exhibit is made a part of this stipulation.

"7. On August 5, 1958, the aforesaid Wallach truck was being operated and driven on Missouri Highway W in Jefferson County, Missouri, and went off the pavement, and as a direct and proximate result thereof, Glenwood Allen claimed to have been injured. At the time of said accident, said truck was loaded with hay from the aforesaid field of lespedeza, and the haying operation was still in progress, which hay was being taken to a barn to be stored.

"8. At the time of the accident in question, said truck was being driven by Richard Elder, with Glenwood Allen a passenger thereon. Glenwood Allen was still assisting in the haying operation.

"9. As a result of the above mentioned accident and casualty, a lawsuit was filed in Jefferson County, Missouri, by Glenwood Allen, a minor, by his next friend, Arthur C. Allen, against Edward Wallach, praying damages in the sum of Fifteen Thousand Dollars ($15,000.00). A copy of said petition is attached hereto, marked Exhibit 3 and made a part hereof.

"10. Soon after the accident above referred to, Edward Wallach reported the occurrence to the Farmers Mutual Automobile Insurance Company and said Company thereupon investigated said occurrence and thereafter advised Edward Wallach that its policy of insurance was not applicable to the occurrence herein referred to and thereupon refused to him a defense against said claim, and denied any obligation to indemnify said Edward Wallach on account of said claim and disclaimed any coverage.

"11. After notice of the accident above referred to, the Farm Bureau Mutual Insurance Company investigated the occurrence in question.

"12. Thereafter, at the request of Edward Wallach, the Farm Bureau Mutual Insurance Company, because of the existence of its policy, marked Exhibit A herein, undertook the defense of Edward Wallach.

"13. On September 14, 1959, the case of Glenwood Allen, a minor, by his next friend, Arthur C. Allen, was tried in the Circuit Court of Jefferson County, Missouri, and the Court, after hearing the evidence, rendered a verdict in favor of said Glenwood Allen and against said Edward Wallach for Two Thousand Dollars ($2,000.00). This lawsuit and resultant verdict was a friendly suit, the amount being mutually agreed upon by negotiations. Also, on or about said date, a settlement was negotiated with the parents of said Glenwood Allen, for their claim arising out of this occurrence and in connection therewith, they executed a release, releasing any claim they might have against Edward Wallach for the sum of One Thousand Three Hundred Thirty-three Dollars and 33/100 ($1,-333.33). The judgment was satisfied of record and the payment thereof was made by Farm Bureau Mutual Insurance Company of Missouri. The said Farm Bureau also paid One Thousand Three Hundred Thirty-three Dollars and 33/100 ($1,333.33) as consideration for the release above mentioned. The aforesaid friendly suit was defended by and the aforesaid parents' settle-

ment was negotiated by Farm Bureau Mutual Insurance Company of Missouri by and through attorneys employed by them for such purposes.

"14. The Farmers Mutual Automobile Insurance Company, defendant, was kept advised by the plaintiff of the status of the claim of Glenwood Allen, and prior to the settlement of the claim of Glenwood Allen, defendant was advised by plaintiff of plaintiff's intention to seek reimbursement for the sum of said settlement, plus expenses from defendant, and at all times defendant continued to disclaim and deny coverage under its policy and refused to undertake defense or indemnification, in part or in total, of Edward Wallach.

"15. The plaintiff, in addition to the sum of Three Thousand Three Hundred Dollars and 33/100 paid in the settlement of the claim of Glenwood Allen, a minor, and his parents, which it negotiated, paid the following sums for the following purposes on account of said claim:

| | |
|---|---|
| Circuit Clerk of Jefferson County—court costs | $59.00 |
| Roberts & Roberts, Attorneys, fees and expenses | 899.80 |
| Earl Blackwell, Attorney—fees incurred, representing Edward Wallach as his personal attorney prior to plaintiff undertaking his defense— | $125.00 |

"16. The photostatic copies of checks here attached, marked Exhibit 5, were paid to Glenwood Allen by Edward Wallach for labor and were by Glenwood Allen endorsed and cashed, and said Exhibit is made a part of this stipulation.

"17. It is specifically understood by and between the parties hereto that, although all the facts herein set out are by them stipulated to be true, the right to challenge the propriety of the court's consideration of these facts is not waived but specifically preserved to the parties.

"It is further understood by and between the parties hereto that each party has the right to introduce additional evidence at the trial going to any of the foregoing by way of elaboration thereon or explanation, but not in contravention thereof, and any additional evidence to other facts not here stipulated to any legal effect whatsoever."

Exhibit "A," referred to in the stipulation of facts, is the policy issued by the plaintiff and is commonly known as a farmers comprehensive liability policy. The portions of this policy which are pertinent are as follows:

"COVERAGE A—BODILY INJURY LIABILITY.

"To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, because of bodily injury, including death at any time resulting therefrom, sustained by any person or persons.

\* \* \* \* \* \*

"COVERAGE C—EMPLOYERS LIABILITY.

"To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages because of bodily injury, including death at any time resulting therefrom, sustained by any farm employee while engaged as such in the employment of the insured.

\* \* \* \* \* \*

"III DEFINITIONS.

\* \* \* \* \* \*

"(d) FARM EMPLOYEE. Farm employee means an employee of the named insured or spouse whose duties

"(1) are incidental to the ownership, maintenance, or use of the farm premises, or

"(2) are domestic, or

"(3) include the maintenance or use of automobiles, tractors, farm implements or teams.

"The term farm employee shall not include the named insured or spouse or any relative of either who resides on the premises unless such relative is named as a farm employee in the declarations."

Exhibit "B" is the policy issued by the defendant and is commonly known as a family automobile policy and contains the usual coverage and definitions and also contains, under EXCLUSIONS the following provision:

"This policy does not apply under Part I:

*　　*　　*　　*　　*　　*

"(c) to bodily injury to any employee of the insured arising out of and in the course of (1) domestic employment by the insured, if benefits therefor are in whole or in part either payable or required to be provided under any workmen's compensation law, or (2) other employment by the insured;
* * *."

Further evidence was introduced by direct testimony and by depositions. Edward Wallach had obtained the services of Glenwood Allen and three other boys (all about the same age as the Allen boy who was 16) all of whom were doing about the same type of work in the haying process. Mr. Wallach had hired all the boys and had agreed to pay them $1.00 per hour and their employment was to last until this operation was finished, with no limit as to time placed on it. All instructions relative to the work came from Wallach and the boys were under his control and subject to his directions at all times. At the time of the injury, Wallach and his brother were running tractors in the field while the four boys were loading bales of hay into a truck. One of the boys, Richard Elder, drove the truck as the other boys loaded it. When the truck was full the boys started to the

barn with Elder still driving it. (Wallach testified that Elder was not authorized to drive the truck on the highway, but just in the field). The accident occurred on the highway when the truck left the pavement, and Allen was injured. Allen was riding in the truck at the time. No other vehicles were involved in the accident. Glenwood Allen had worked for Wallach prior to the day of the accident (but not before that summer) although the evidence is not clear as to how much he had worked. The testimony was that he had worked two or three days prior to this time, or maybe five times or a couple of times, most of the time four to six hours, a half day. He was paid $1.00 per hour and never worked a full day at any one time. He lived in the same neighborhood with Wallach. He was paid at the end of each day, either at the time that the work ended for the day or the next morning.

Thus, under the evidence (including the provisions of the defendant's policy), the question for the determination of this court is whether Glenwood Allen (also known as Arthur Glenwood Allen) who was the injured party, was, at the time of his injury, an employee of Edward Wallach under such conditions and circumstances as to bring him within the provision of the defendant's policy which did not afford coverage "to any employee of the insured arising out of and in the course of * * * other employment by the insured."

The plaintiff relies on the case of Daub v. Maryland Casualty Co., Mo.App., 148 S.W.2d 58. In that case Winton Meyer, a sixteen year old boy was injured while engaged in work for Daub, whose insurance company denied liability under its policy. The injured boy, through his mother as next friend, brought suit against Daub which resulted in a judgment against Daub and Daub then brought suit for the recovery of that judgment against his insurance company.

The evidence shows that the mother of the injured boy worked for Daub as a general housekeeper. She only worked on

Saturday usually between 8 or 9 o'clock in the morning until noon or 1 o'clock. She was paid $1.40, $1.50, or $1.60 and her lunch each day she worked. On one occasion Mrs. Meyer asked Mrs. Daub if she did not have some work for Winton to do to keep him out of mischief, saying that maybe he could rake some leaves. Thereafter on one Saturday morning Mrs. Meyer brought Winton along with her and he raked some leaves. He worked at that until about 11 o'clock and Mrs. Daub gave him a quarter and his lunch. On a Saturday a few weeks afterwards Winton grubbed out a stump in the back yard. It took him until lunch. Later Mr. Daub drove to the Meyer home to get Winton to rake leaves. He found Winton out in the yard and asked him if he wanted to rake some leaves. Winton went into the house and reported to his mother and came out with his rake and got in the car. That was about 9:30 or 10 o'clock in the morning. When they arrived Winton commenced raking the leaves in the front yard. While he was raking leaves, Mr. Daub was assembling ladders on the porch in order to take leaves out of the guttters and put strainers in the downspouts to prevent the leaves from going through. When he had the ladders up, he asked Winton to stand on the bottom ladder to steady it and hold it in place. Winton got on the ladder and while standing there Mr. Daub threw some leaves out of a gutter in such a way that they struck Winton in the face and at the same time did something that shook the ladder and caused Winton to lose his balance so that he fell from the ladder to the concrete walk, whereby he was seriously injured. It was these injuries that gave rise to the litigation.

The court stated (148 S.W.2d loc. cit. 60:)

"The word 'employed' is capable of a great variety of interpretations, and is therefore subject to restrictions and limitations arising from its use in connection with other words, or from the context of the contract or statement in which it appears. The word as used in the policy in suit here obviously imports the relation of master and servant or employer and employee, but it does not necessarily import every sort of such relation. That the relation in its broad sense existed when Winton was raking leaves or standing on the ladder there could hardly be a question. And this is so whether his services were gratuitous or to be paid for. But does this mean that he was employed within the meaning of the policy? The insuring clause of the policy grants insurance against liability for injuries suffered by 'any person or persons not employed by insureds.' The words 'any person or persons' are most comprehensive and unambiguous. The restrictive words 'not employed' are susceptible of many meanings, and therefore necessarily introduce ambiguity and leave the clause open to construction. And that construction most favorable to the insured must be adopted.

"The word 'employee,' which is the correlative of employer, is commonly used as signifying continuous service, or as designating a person who gives his whole time and services to another for a financial consideration, or as designating a person who performs services for another for a financial consideration, exclusive of casual employment, or a person in constant and continuous service, or a person having some permanent employment or position, or a person who renders regular and continued services, not limited to a particular transaction, or a person having a fixed tenure or position. The words, employed and employee, as used in insurance policies, generally denote regular employment, as distinguished from occasional, incidental, or casual employment. It is in this sense, we think, that the word employed is used in the policy with which we are here concerned. The obvious purpose

of the restrictive words 'not employed' is to exclude from coverage any person regularly employed, or, in other words, any regular employee, not a mere occasional, incidental, or casual employee. * * * "

The defendant relies on the case of State Farm Mutual Automobile Insurance Co. v. Brooks, 136 F.2d 807, decided by the Circuit Court of Appeals, 8th Circuit, in 1943. (The Daub case, supra, had been decided in 1941). In the Brooks case, the insured was engaged in operating, among other things, a fuel yard in Joplin, Missouri. It was part of such operation to obtain wood from points outside Joplin. In late August and early September, two boys, both 16 years of age, accepted temporary employment at the place where the wood was obtained, to collect it and pile it for loading and transportation in the truck covered by plaintiff's policy to the fuel yard of the insured in Joplin. On September 13, 1941, and while the policy was in force, the two boys were riding home in the loaded truck at which time an accident occurred resulting in the death of one boy and injury of the other. The boys received $1.00 per day and their employment was to last until the slab pile was sawed and hauled to the wood yard. It was contemplated that this would take a week and perhaps longer. It was understood between the boys and Brooks, that the boys would be carried to and from the slab pile as they had no other means of transportation. The insurance company brought a suit in the nature of a declaratory judgment to determine whether or not the company should defend the actions brought against the insured for the death of the one boy and injury to the others. The policy provided, " 'This policy does not apply: * * * to bodily injury to or death of any employee of the insured while engaged in the business * * * of the insurer.' " (136 F.2d loc. cit. 809.)

After holding that the law of Missouri applied, the court stated:

" * * * We think the Missouri decisions have settled that the word 'employee' as used in this policy clause is subject to interpretation by the courts to the extent that it is not to be deemed absolutely inclusive of any and every person who may happen, at the time of an accident to be rendering some service to the insured in his business at his direction. But those decisions also indicate the kind of situations where interpretation may be called for. It is recognized that generally the insured and all the persons who are working for him for wages in his business are excluded from the insurance. A cardinal object of the insurance is to distinguish between the public and those engaged in the business, and to include the former and to exclude the latter. But in the leading case of Daub v. Maryland Casualty Company, Mo.App., 148 S.W.2d 58, illustrating the exceptional situation, it appeared that the insured, under a policy insuring against liability for injuries suffered on his premises by any person or persons 'not employed' by him, was working about his house and undertook to clean some leaves out of the gutters and downspouts. He called on a sixteen year old boy to stand on and steady the ladder for him, and the boy, while so doing, suffered an accidental injury. Although the boy had done some other chores around the premises on occasions and had been given small sums in recognition, it was held by the St. Louis Court of Appeals that the boy holding the ladder was a person 'not employed' by the insured within the meaning of the policy at the time of the accident, and the Supreme Court of Missouri, in State [ex rel. Maryland Casualty Co.] v. Hughes, 349 Mo. 1142, 164 S.W.2d 274, 276, quashed the certiorari taken to reverse the decision. In these two opinions the courts sought a proper characterization of the tasks the boy did on the premises at the insured's direction and found them to be within the description 'occasional, incidental,

or casual employment'. Their performance did not constitute him an employee or one employed in the sense of the exclusion of the policy.

* * * * * *

"But we think that the facts in the Daub case are in contrast to those presented here * * *.

"Although the employment of the boys in this case contemplated no more than a week's work, the work they were hired to do, and were engaged in, was not a mere chore, but was a substantial, ordinary, recurring and necessary part of the insured's regular business of obtaining wood at his yard in Joplin and selling it there for fuel. The wage of the boys was fixed at a dollar a day and was a compensatory wage. Though in a sense the obtaining, transporting, and unloading of the wood to be sold as fuel might be called incidental to the fuel business as a whole, they constituted a substantial part of that business. Nor may the work be regarded as casual. Sonnenberg v. Berg's Market, 227 Mo.App. 391, 55 S.W.2d 494; March v. Bernardin, 229 Mo.App. 246, 76 S.W.2d 706; Carrigan v. Western Radio Company, 226 Mo.App. 468, 44 S. W.2d 245. It involves steady, continued application throughout the days and until completion. The thirty-five miles of travel by the truck between the yard at Joplin and the slab pile was also clearly within the employment of the boys in the business. The appellees have cited cases in which such transportation was not so included, as in Green v. Travelers Insurance Company, 286 N.Y. 358, 36 N.E.2d 620, where berrypickers employed on a piece basis were free to go to and come from the fields as they chose, but were given a ride as an accommodation. Here the boys had no other means of getting to the slab pile and their transportation back and forth was contemplated in the contract of employment and was a necessary part of the insured's business.

* * * * * * .

"The minority of the boys at the time of the accident is not material to the inquiry whether they were, as a matter of law, to be deemed members of the public covered by the policy, or employees engaged in the business of the insured. What was done determined their status as employees." (136 F.2d 1. c. 811, 812.)

The Daub case, supra, held that clauses in policies are subject to interpretation by the courts. Generally speaking the object of these policies is to distinguish between the public and those who engage in the business of the insured. The exclusion clause in the policy of the defendant in the case at bar denies coverage to any employee of the insured arising out of and in the course of employment by the insured. This provision distinguishes between the public generally and those who were engaged in any employment of the insured. This wording is some different from that in the Daub case where the term "not employed" was used, and perhaps is not as broad as the term used in the Brooks case, supra, where the exclusion applied to "any employee of the insured while engaged in the business * * * of the insured." In the Daub case the boy was raking leaves and doing work around the house. These were odd tasks and had been sought by his mother for the purpose of keeping the boy out of mischief. The boy's work had nothing to do with the occupation of the insured. In the case at bar the boy was doing work that was a necessary part of the employer's means of making a living, that is a part of his farming operations. The work of loading hay and hauling it to the barn for storage was a part of the employer's occupation. The Allen boy was employed to do a definite job and stay with it until the operation was completed. He was to be paid a definite wage for his work. He was under the direction, supervision and control of the person who ran the farming operations.

The Allen boy was hired to do, and was engaged in "not a mere chore, but was a

substantial, ordinary, recurring and necessary part of the insured's regular business * * *." (Language of the Brooks case.)

We think that the facts in the Daub case were different than the facts at bar to such an extent that the proper interpertation of the policy's provision distinguishes the Daub case from the case at bar.

In the Daub case the request for employment was made by the mother who was a domestic of the employer. The boy's employment was rather indefinite and vague and required the one supervising him to point out his particular duties. He was engaged in casual, and rather indefinite, odd chores about the premises without any definite arrangement as to time or compensation and for no definite operation.

As in the Brooks case, the Allen boy in this case was sought out by the employer who arranged to pay a specific wage for specific work and for such time as it took to complete the operation of harvesting the hay, all of which was a part of the employer's business.

We hold that Arthur Glenwood Allen, at the time of his injury, was an employee of the insured, Edward Wallach, and that his employment at that time was such that it fell within the exclusion provision of the policy issued the insured by the defendant. The insured had no coverage under defendant's policy as to the injured employee under the facts in this case.

The parties in this litigation agreed in their briefs and in their arguments that the sole question for review by this court is whether Arthur Glenwood Allen was an employee of Edward Wallach. The appellant raised no other serious contention. We agree that this court should review the cause de novo, and need not defer to the findings of the trial court since there was no serious conflict in the oral testimony, Skatoff v. Solomon, Mo.App., 244 S.W.2d 590. However, we find that the findings of the trial court are supported by substan-

tial evidence and after reviewing the case de novo determine that the findings of the trial court should be affirmed.

The judgment of the trial court is hereby affirmed.

ANDERSON, P. J., and WM. M. KIMBERLIN, Special Judge, concur.