BRUNSWICK CORPORATION, Plaintiff-Appellant,

v.

James A. BRISCOE, Jr., et al.,
Defendants-Respondents.

No. 36119.

Missouri Court of Appeals,
St. Louis District,
Division Three.

May 6, 1975.

Thomas, Busse, Goodwin, Cullen, Clooney & Ottsen, Donald H. Clooney, St. Louis, for plaintiff-appellant.

George T. Mehan, Jr., Clayton, for defendants-respondents.

PER CURIAM:

Plaintiff-appellant Brunswick Corp., appeals from a judgment in favor of defendants-respondents James Briscoe, Sr., James Briscoe, Jr. and Marie Briscoe in a suit by Brunswick for recovery on promissory notes, including a lost note for $25,000. The basic thrust of Brunswick's appeal is that the trial court's finding of facts and conclusions of law resulting in judgment for the Briscoes in a court tried case were erroneous. We disagree with Brunswick's contentions and affirm the judgment.

The Briscoes were officers of Linden Lanes, Inc., a bowling lanes and related enterprise in St. Charles County, Missouri. In June, 1959 Linden Lanes contracted with Brunswick [1] for the purchase of auto-

---

1. The contracts were actually with two of Brunswick's predecessor corporations.

matic pin setters, bowling lanes and related equipment. In payment of the bowling equipment, Linden Lanes executed two promissory notes, secured by chattel mortgages, in the total amount of $331,644.30. By agreements in 1962 and 1963 the payment schedules on the notes were extended, but due to financial distress of Linden Lanes there was a delinquency on the notes totaling $29,602 as of March 15, 1965. In August of 1965, it was apparent that Linden Lanes' financial condition was rapidly deteriorating, and to prevent further enervation which would result in the company's demise, Brunswick and the Briscoes conducted negotiations directed primarily at keeping the bowling lanes open and the business and its assets intact to take advantage of the heightened activity of the forthcoming winter bowling leagues. On August 19, 1965 James Briscoe, Sr. and James Briscoe, Jr. met with representatives of Brunswick at the St. Charles office of Paul Niedner, the attorney for Linden Lanes and the Briscoes. What transpired at the meeting is disputed by the parties, except that all parties agree that Brunswick was to take over the operation of the bowling alleys and was to lease the premises on which the bowling alleys were located together with certain bowling and related equipment and facilities therein for $1,833.33 per month.

The controversy centers on what transpired between the Briscoes and Brunswick for the settlement of Linden Lanes' financial obligations with Brunswick. Brunswick contends that settlement of Linden Lanes' financial obligations was resolved in the following manner: Linden Lanes would return all the mortgaged bowling equipment with Brunswick taking over the bowling operation and renting from Linden Lanes the premises and bowling, food and bar facilities and equipment therein, including the facilities and equipment owned by Linden Lanes, for $1,833.33 per month. The outstanding obligation of $29,602 would then be cancelled with the Briscoes, on behalf of Linden Lanes, executing a promissory note for $25,000 in favor of Brunswick. Thus, according to Brunswick, all of Linden Lanes' obligations to Brunswick represented by the outstanding debt of $29,602 on the two notes originally executed were cancelled in exchange for a $25,000 promissory note from Linden Lanes and the lease by Brunswick from Linden Lanes of the bowling alley premises and all bowling, food and bar facilities and equipment therein for $1,833.33 per month. Brunswick would then operate the bowling enterprise. At trial, Brunswick introduced the lease having as a separate attachment a listing of bar, food and other equipment as a part of the lease. The $25,000 promissory note successfully eluded Brunswick's search and was not produced at trial nor could Brunswick account for its loss.

The Briscoes, on the other hand, deny the execution of the $25,000 note. It is the Briscoes' contention that Brunswick agreed to cancel all outstanding promissory notes and release Linden Lanes from any obligation on the $29,602 debt owing on the original notes signed. In return for the cancellation of the debt, the Briscoes allege that they agreed on behalf of Linden Lanes to deliver possession, occupancy and use of the entire bowling operations to Brunswick without any interruption in business and to the transfer of all food, bar and bowling equipment including facilities and equipment owned outright by Linden Lanes. The Briscoes assert that Linden Lanes owned bowling, food and bar equipment and facilities having a value of $40,000 which was not included in the lease of the premises; that due to the exigent circumstances requiring the continuance of business operations, Linden Lanes simply turned over everything to Brunswick— partly by lease of the premises and certain equipment and facilities and the balance by outright transfer to Brunswick of $40,000 worth of bowling, food and bar equipment owned by Linden Lanes but not included in the lease. In return, all obligations owed Brunswick were cancelled. By this ar-

rangement, Brunswick would thereby be able to take possession of and operate·an ongoing business without any interruption —a most advantageous scheme for Brunswick, as there would be no loss of revenues. Brunswick would operate the bowling venture with the premises, facilities and equipment rented from Linden Lanes for $1,833.33 per month together with the $40,000 worth of bowling, food and bar equipment and facilities owned by Linden Lanes which was not included in the lease but which was transferred to Brunswick.

Both Niedner and the Briscoes testified that Brunswick was most anxious that the enterprise did not close down, and the plan entered into with the transfer of the title Linden Lanes Bowling operations permitted immediate possession and operation of the bowling business by Brunswick. Brunswick counters that the lease covered all equipment, including that owned by Linden Lanes; that there was no separate transfer of equipment and facilities having a value of $40,000.

On January 1, 1966, Linden Lanes forfeited its charter for failure to file an annual report and antitrust affidavit. Title to the land and building housing the bowling alleys and the bowling, food and bar facilities owned by Linden Lanes was subsequently transferred by the Briscoes, subject to the August 19, 1965 lease of the premises and facilities to Brunswick. Brunswick continued to lease the properties and operate the bowling alleys to time of trial.

The facts when boiled in the testimonial caldron leave two issues for determination: 1) did the Briscoes execute a $25,000 note in favor of Brunswick? 2) was Linden Lanes' debt of $29,602 to Brunswick cancelled by the immediate transfer to Brunswick of Linden Lanes' entire bowling alley enterprise? The trial court found in the negative on the first issue and in the affirmative on the second, thereby ruling in favor of the Briscoes.

In support of its contentions that the Briscoes signed a $25,000 note as part of an agreement to release Linden Lanes from liability on the two original notes, Brunswick presented the testimony of the two attorneys involved in the negotiations, Paul Niedner, who had represented Linden Lanes and the Briscoes, and Donald Dalton, who had represented Brunswick. Niedner testified that a meeting was held in his office on August 19, 1965 between representatives of Brunswick and Briscoe Sr. and Briscoe Jr.; that Brunswick gave Niedner for his inspection a settlement agreement, a $25,000 promissory note payable to Brunswick, a mutual release between the parties on all obligations on the prior notes, and a deed of trust on the land housing the bowling lanes to be used as security for the $25,000 note. All of the foregoing documents were unexecuted when given to Niedner. Niedner testified that the parties expressed an intention to enter into the agreement reflected by the documents, but at trial, Brunswick could only present the unexecuted copies of the documents. Dalton, who represented Brunswick, was not able to be present at the August 19, 1965 meeting, but Niedner talked to him by telephone on that date. Niedner further testified that he was to place the documents in escrow with a local bank for Dalton's examination, and if Dalton found them satisfactory, he was to distribute the appropriate copies to the proper people. Niedner testified that he was uncertain as to whether any of the documents, and the $25,000 note in particular, had been executed. A memorandum to the escrow agent signed by Niedner set forth that the $25,000 promissory note was "to be signed," indicating that it was unexecuted when placed in escrow by Niedner.. Dalton, using correspondence from his files to refresh his recollection of the transaction between Brunswick and Linden Lanes, testified that he recalled that the documents had been signed; that sometime after August 19, 1965 probably shortly after November 4, 1965, he remembered seeing an executed note for $25,000 with an executed deed of trust, but the deed of

trust was never recorded. To stress that the Briscoes had in fact executed the note, Brunswick also presented evidence that in 1970, the Briscoes' attorney had written to Brunswick asking for a copy of the purported $25,000 note relative to a tax matter Linden Lanes had with Internal Revenue Service.

Brisco Sr. testified that neither he nor any other officer of Linden Lanes signed a note for $25,000. He further testified that Brunswick had agreed to cancel all outstanding obligations if Linden Lanes would immediately transfer to Brunswick the entire bowling alley operation, including bowling, food and bar equipment and facilities owned outright by Linden Lanes; that the transfer would allow Brunswick to immediately take possession of the bowling business, thus preventing a temporary closing and disruption of bowling leagues. Briscoe further testified that the transfer of the business was accomplished through the lease of August 19, 1965 coupled with the transfer of bowling, food and bar equipment and facilities owned outright by Linden Lanes. While the Briscoes admitted that Linden Lanes' financial statements provided for an amount due and owing Brunswick after August, 1965, there was never a concession by the Briscoes that they had executed a $25,000 note in favor of Brunswick.

Brunswick sued to recover on the $25,000 note and in the alternative made claim that if recovery should be denied on the $25,000 note that it was entitled to recover the unpaid balance of $29,602 due on the original notes. Brunswick also sought an accounting of the proceeds of the sale of the real property on which the bowling lanes property was located, charging that the sale was made after Linden Lanes' corporate charter had been forfeited and was therefore unlawful.

The trial court rendered the decision in favor of the Briscoes, finding that Brunswick had agreed to cancel the outstanding notes in exchange for immediate possession of the entire bowling lanes enterprise including the transfer to Brunswick of bowling, food and bar equipment and facilities valued at $40,000 and owned by Linden Lanes. The court also found that while Brunswick had prepared a $25,000 note and offered it to be executed by Linden Lanes in exchange for cancelling the outstanding notes, there was insufficient evidence to prove that the $25,000 note had been executed on behalf of Linden Lanes. The court concluded that Brunswick had failed to sustain its burden of proof; that there was no basis for an accounting of the proceeds from Linden Lanes' sale of real property, since at the time of the sale neither the Briscoes nor Linden Lanes was indebted to Brunswick.

■ In our review of a court tried case we are to give due regard to the opportunity of the trial court to judge the credibility of the witnesses. Johnson County Post No. 2513, V.F.W., Inc. v. Jackson, 519 S.W.2d 335 (Mo.App.1975); Carroll v. Hahn, 498 S.W.2d 602 (Mo.App.1973); Rule 73.01(3), V.A.M.R.

Much of the evidence below is either documentary—exhibits and deposition—or undisputed oral testimony and therefore does not raise a witness' credibility issue. See In re Estate of Wintermann, 492 S.W.2d 763, 767 (Mo.1973); Mission Ins. Co. v. Ward, 487 S.W.2d 449, 451 (Mo. banc 1972); Delany v. St. Louis Union Trust Co., 518 S.W.2d 704, 709 (Mo.App. 1974); Prior v. Hager, 440 S.W.2d 167, 172 (Mo.App.1969); Adams v. Manchester Ins. & Indem. Co., 385 S.W.2d 359, 363 (Mo.App.1964); Farm Bureau Mutual Ins. Co. v. Farmers Mutual Auto. Ins. Co., 360 S.W.2d 325, 333 (Mo.App.1962). However, as to the vital disputed facts—the nature of the transaction of August 19, 1965—there is irreconcilable, directly conflicting verbal testimony. We therefore must give due deference to the trial judge's findings as to the disputed transaction, since he had the opportunity to hear and observe the witnesses' demeanor. R.

L.S. v. J.E.S., No. 27305 (Mo.App.K.C.D., March 31, 1975); Farmers Mut. Fire & Lightning Ass'n. v. La Vallee, 501 S.W.2d 69, 74 (Mo.App.1973), and cases cited therein.

The conflicting testimony as to whether the Briscoes signed a $25,000 promissory note on behalf of Linden Lanes, Inc. was as follows:

1. Donald Dalton, then attorney for Brunswick, stated that it was his "best recollection" that he saw that the note had been signed when he reviewed the documents in late 1965. However, he did not recall how or in what form the note had been signed.

2. Paul Niedner, then attorney for Linden Lanes, Inc., testified that, "depending upon my recollection, the note was signed at the August 19th meeting." However, he also said he was "not certain" that it was executed since the memorandum he wrote to the escrow agent referred to the note "to be signed."

3. The Briscoes' trial attorney,[2] testified that, upon advice of prior counsel and accountants, the Briscoes had taken the position with the Internal Revenue Service that a note had been executed. However, it was explained that the Briscoes refused to make an affidavit to that effect, because they did not have the note and because Briscoe, Sr. could not recall that a note was signed.

4. James A. Briscoe, Sr., who attended the August 19th meeting on behalf of Linden Lanes, Inc., unqualifiedly declared that neither he nor any other officer of the corporation signed the note.

Militating strongly against the fact of execution of the note is its wholly unexplained absence. No representative from Brunswick who was present at the August 19, 1965 meeting appeared or testified as to having viewed the execution of the note or

any document; no representative from Brunswick testified as having received or not having received the note from the escrow agent according to any direction after closing; there was no representative from the escrow agent to testify that the executed note had been received or disbursed in accord with a settlement agreement or by direction; and, of course, there was no recordation of the note or deed of trust allegedly securing the note.

We do not find that the trial court was in error in finding for defendants. The testimony in favor of the execution of the note contains some equivocation while testimony against the execution of the note does not. We therefore give deference to the conclusion reached by the trial court where there is a conflict in the testimony. Guerin v. Yocum, 506 S.W.2d 47 (Mo. App.1974). We cannot find that the court was in error in finding that the $25,000 note was never executed. R.L.S. v. J.E.S., supra.

Brunswick also beseeches us to find that the trial court erred in finding that Linden Lanes had transferred bowling, food and bar equipment and facilities valued at $40,000 to Brunswick thereby cancelling out the outstanding obligation of $29,602. Brunswick claims that the $40,000 worth of equipment referred to by the court was included in the lease of real property and facilities to Brunswick for $1,833.33 per month. We first observe that the record concerning the equipment accompanying the real property in the lease of premises and Briscoe's testimony relating to the transfer of $40,000 worth of equipment owned by Linden Lanes is scarcely a paradigm for clarity. An exhibit purporting to be a lease of real estate from Linden Lanes to Brunswick had as a separate attachment a list of bar, kitchen and snack bar equipment forming a part of the lease, and the sales contract whereby the Briscoes disposed of their property

---

2. Niedner was no longer the attorney for the Briscoes or Linden Lanes at time of trial.

rights in the bowling alley premises made reference to bar and snack bar fixtures included in the lease with Brunswick. On the other hand, Briscoe, Sr. testified that in consideration of the cancellation of all debts, the Briscoes had transferred to Brunswick bowling, food and bar equipment valued at $40,000 which was not a part of the lease. Admittedly the testimony regarding the particular bowling, food and bar equipment which was part of the lease and which was allegedly not part of the lease was rather jumbled and confused. But no effort was made by either party to clarify or identify the particular equipment about which Briscoe testified, and it is not the function of this court to serve as an advocate for one side or the other in our review of the record. Brunswick argues that all the equipment transferred was part of the lease, but Briscoe testified that $40,000 of equipment transferred was not part of the lease; his statement was essentially unchallenged. The trial court agreed with Briscoe, and we defer to the trial court's finding in that regard. The testimony of Briscoe, Sr. adequately supports the trial court's finding that there was a transfer of $40,000 of equipment not subject to the lease as cancellation for the outstanding debt of $29,602. The trial court had the right to accept the testimony of the Briscoes and reject the testimony presented by Brunswick. Freshour v. Schuerenber, 495 S.W.2d 116 (Mo.App. 1973).

Brunswick claims that in reaching its decision that there was no $25,000 note executed, the trial court erroneously disregarded an admission by Briscoe, Sr. and his attorney that Linden Lanes was indebted to Brunswick for $25,000, referring specifically to the fact that the Briscoes' attorney had sought a copy of the note from Brunswick to be used for Internal Revenue Service purposes, plus the fact that the corporation's financial statement reflected an indebtedness to Brunswick. However, Brunswick overlooks the fact that Briscoe, Sr. refused to accede to an Internal Revenue Service request that he sign an affidavit conceding that a $25,000 note had been signed; that Briscoe consistently and steadfastly denied ever having signed such a note. With regard to the letter to Brunswick requesting a copy of the $25,000 note to present to the Internal Revenue Service, the explanation was that the request was based in large measure on Briscoes' attorney having seen unexecuted copies of the documents which Brunswick apparently drafted as their proposal for settling the financial affairs with Linden Lanes. Relying on these unexecuted documents, Briscoes' attorney attempted to find the executed note but met with no success. We believe there were adequate explanations of Briscoes' attorney's statement that a note was involved in the settlement. The trial court, as the trier of fact, need not give binding effect to the alleged admission. We hold that the trial court was not erroneous in finding no execution of the note.

It is aphoristic that evidentiary admissions are entitled to considerable weight. Creager v. Chilson, 453 S.W.2d 941, 943 (Mo.1970). A party's admission of a material fact relevant to an issue in the case is admissible as substantive evidence and may be of probative value even though it is not a direct admission of the ultimate fact in issue. Bridgeforth v. Proffitt, 490 S.W.2d 416, 421–422 (Mo. App.1973). And an admission by a party-opponent is binding and conclusive absent contradiction or a reasonable explanation by the admitting party. Scott v. Norman, 391 S.W.2d 890, 895 (Mo.1965); Partney v. Agers, 238 Mo.App. 764, 187 S.W.2d 743, 747 (1945); McCormick, Evidence § 262 at 630 (2d ed. 1972). However, if there has been an explanation of the party's admission, it is for the trier of fact to determine the weight and value to be accorded it. Bolivar Farmers Exchange v. Eagon, 467 S.W.2d 95, 98 (Mo.App.1971). In determining its weight and value, the trier of fact must consider the circum-

stances under which it was made. See State ex rel. Taylor v. Anderson, 254 S. W.2d 609, 615 (Mo.1953). An admission should possess the same degree of certainty as would be required in the evidence it represents. Donnelly v. Goforth, 284 S. W.2d 462, 465 (Mo.1955). Keeping these principles in mind, we believe that the trial court did not err when it refused to give binding effect to the purported admissions relative to the Internal Revenue Service claim and accounting notation. When asked whether Linden Lanes' balance sheet reflected an amount due and owing to Brunswick, the Briscoes' attorney stated that he did not know that. He twice further referred to it as an "alleged liability" into which the Internal Revenue Service had inquired. We believe that the Briscoes' attorney's statement about Linden Lanes' financial statements does not rise to the level of an admission. There is no degree of certainty in his statement. Donnelly v. Goforth, supra.

■■■ Brunswick argues that the trial court erred in finding a cancellation of the two original promissory notes. Brunswick contends that when the court ruled that the $25,000 note had not been executed it was compelled to find that the original notes were still in effect and that Linden Lanes owed Brunswick $29,602 on those notes. Brunswick's premise for this argument is the general proposition that one may not be released from liability on a written instrument except by another written instrument. Brunswick correctly states the general rule. But as to negotiable instruments, a holder may "even without consideration" discharge any party by ei-

ther "any manner apparent on the face of the instrument . . ." or by " . . . renouncing his rights by a writing signed and delivered or by surrender of the instrument to the party to be discharged." § 400.3–605(1), RSMo 1969, V.A.M.S.[3] However, by statute:

"Any party is also discharged from his liability on an instrument to another party by any other act or agreement with such party which would discharge his simple contract for the payment of money." § 400.3–601(2), RSMo 1969.[4]

■■ This court has resolved the apparent conflict between previous statutes containing like provisions by holding that a negotiable instrument may be discharged by an oral release or an oral agreement entered into for valuable consideration. It is only when there is a gratuitous discharge that the statute requiring a writing applies. English v. Evans, 157 S.W.2d 793, 795 (Mo.App.1942); Nelson v. Hudson, 221 Mo.App. 211, 299 S.W. 1111, 1112–1113 (1927). See also Barber v. Mallon, 168 S. W.2d 177, 179 (Mo.App.1943).[5] Since there was valuable consideration involved in the oral agreement between Brunswick and Linden Lanes, Inc., such agreement was not required to be in writing in order to discharge the two prior promissory notes. Therefore, the trial court did not err in finding that the notes were discharged by oral agreement.

■■■ Central to Brunswick's appeal is its contention that the trial court erred in concluding that Brunswick did not meet its burden of proving the existence of and the execution of the $25,000 note which al-

3. The prior provision was § 401.122, RSMo 1959.

4. The prior provision, § 401.119(4), RSMo 1959, allowed a negotiable instrument to be discharged:
"(4) By any other act which will discharge a simple contract for the payment of money."
The present statute (§ 400.3–601(2)), in addition, specifically recognizes the possibility

of a discharge by agreement. See Uniform Commercial Code Comment to § 3–601 (20B V.A.M.S. at 239–240).

5. This appears to be the majority resolution of the conflict between such "uniform" statutes. See Annot. 65 A.L.R.2d 593, 601–602 (1959); 86 A.L.R. 334 (1933); 69 A.L.R. 846, 850 (1930).

legedly was lost. Brunswick alleges in its pleading that the note had been lost "while it belonged" to Brunswick. Dalton, its local attorney handling the Linden Lanes matter, reviewed his files but did not find an executed—or even unexecuted—copy of the alleged note. Nor could the bank, which supposedly held the note and other documents in escrow produce an executed copy. In addition, there is no indication that the deed of trust, which also allegedly was signed to secure the note on August 19, 1965, ever was recorded. In an action to recover on lost instruments, evidence of its former existence, execution and loss must be clear and convincing. See State ex rel. Dryden v. Thym, 282 S.W.2d 178, 187 (Mo.App.1955); 51 C.J.S. Lost Instruments § 27e at 834-835 (1948). The greater the importance of the instrument to the cause of action, the more conclusive should be the evidence. 52 Am.Jur.2d, Lost and Destroyed Instruments § 60, at 154 (1970). Recognizing that the question of sufficiency of proof of loss of a note sued upon rests largely with the discretion of the trial court and that each case must rest upon its own facts, Newell v. La Font, 251 S.W. 472, 474 (Mo.App.1923), we hold that the trial court did not abuse its discretion in concluding that Brunswick failed to meet its burden of proving the existence and execution of an allegedly lost note. Execution of the lost note—the instrument vital to Brunswick's cause of action—was not proven by clear and convincing evidence.

We have held that the trial court correctly found no debt due and owing to Brunswick after August 19, 1965. Therefore, we need not comment on Brunswick's assertion that it is due an accounting of proceeds from the sale of Linden Lanes, Inc.'s assets, including real property, after its corporate charter was forfeited.

The trial court's findings are not erroneous. The judgment is affirmed.

All Judges concur.