**MISSION INSURANCE COMPANY, a corporation, Respondent,**

v.

**Mark S. WARD et al., Defendants,**

**Mark S. Ward and Clifford Ward, Appellants.**

No. 57937.

Supreme Court of Missouri,
En Banc.

Dec. 11, 1972.

Paul E. Kovacs, Carter, Brinker & Doyen, Clayton, for respondent, Mission Ins. Co.

Klutho & Cody, Edward C. Cody, St. Louis, for appellants.

HOLMAN, Judge.

Plaintiff, Mission Insurance Company, filed this suit seeking a declaratory judgment concerning its obligations under a

policy of automobile liability insurance issued to Seth A. Ward. It alleged that it was not obligated to defend or to pay any judgment that might be rendered in a suit that had been filed against Seth by his grandson, Mark S. Ward, and Mark's father Clifford. A trial before the court resulted in a judgment in favor of plaintiff. Mark and Clifford appealed to the Missouri Court of Appeals, St. Louis District. That court, with three judges concurring and two dissenting, adopted an opinion reversing the trial court's judgment. Upon Mission's application, we ordered the case transferred to this court. It will be determined here "the same as on original appeal." Mo.Const. Art. V, § 10, V.A.M.S.

On August 15, 1969, Mission issued a policy of automobile liability insurance to Seth A. Ward which contained the following exclusion clause: "This policy does not apply: (a) under coverage A, to the liability of any insured for bodily injury to (1) the named insured, (2) any relative of the named insured who is a member of the named insured's household."

On May 22, 1970, Seth, at Clifford's request, drove his (insured) automobile to the school Mark attended in order to pick up Mark and bring him home. After Mark entered the car it was involved in a one-car collision when it struck a bridge abutment and Mark was severely injured. As heretofore stated, Mark and Clifford filed suit against Seth to recover damages resulting from the injuries Mark sustained and this declaratory judgment action followed. Mission contends that its policy is not applicable to Mark's suit because of the quoted exclusion clause and the alleged fact that Mark and Clifford, relatives of Seth, were "member[s] of the named insured's household." The trial court's findings, upon which judgment was entered, was that "Mark Ward and Clifford Ward were members of the insured's household at time of accident. The policy of insurance issued by plaintiff is inapplicable to personal injury action filed by Mark Ward and Clifford Ward against Seth Ward."

Seth A. Ward, age 80, testified that he had lived with his wife in a house at 310 Harrison for 35 years; that it was a six-room house with one kitchen, one refrigerator, one bathroom, and one mailbox; that in March 1970 Clifford had stored his furniture and he and Mark moved in with them temporarily; that Clifford bought his own groceries and kept them in the refrigerator but anyone would get anything he wanted from the refrigerator; that Clifford did most of the cooking but they all seldom ate together, although when Clifford was not there Mark would eat with him and his wife; that they all shared the bathroom and kitchen; that Clifford moved in with them because the rent where he was living was too high, but that he was regularly seeking living quarters elsewhere. This witness further testified that the house was not divided into apartments but that Clifford and Mark occupied a bedroom on the second floor and had their own TV set; that Clifford paid rent to his mother.

Clifford Ward testified that his wife had died about 18 months before he moved in with his father; that after her death he moved to a house on Gist Road where he lived for about a year; that he moved in with his father because the rent on the Gist Road house was too high; that he paid his mother $25 a week rent but the arrangement was temporary; that no specified time was stated for him to stay but he was constantly looking for a suitable place to rent at a reasonable rental; that he and Mark would normally go out for the evening meal although if he had time he would cook a meal; that they would eat with his parents only on special occasions, perhaps on Sunday; that he did the laundry; that all the utilities remained in his father's name except the telephone which he had placed in his name for business purposes; that when they moved to his father's home he did not change his voter registration nor Mark's school; that he has since rented a house and moved into it about three weeks before trial; that in ad-

dition to Mark, his two stepdaughters now reside with him.

Appellants' points upon this appeal are (1) "the court erred in finding that the injured minor grandson, Mark Ward, and his father, Clifford Ward, were members of the insured's household, where all the evidence was that Clifford Ward and Mark Ward were only temporarily residing at the same address as Seth Ward, and that Clifford Ward and Mark Ward were not members of Seth Ward's household," and (2) the court erred in finding the policy inapplicable because "insurance policies excluding 'members of the same household' should not be interpreted to frustrate and defeat protection, rather they should be construed to accomplish the object of furnishing protection." Respondent contends that there was ample evidence to support the trial court's findings and that the judgment should not be set aside because not clearly erroneous, and that we should defer to the opportunity of the trial court to judge the credibility of the witnesses.

 In this court-tried case we review the record upon both the law and the evidence, determine the weight and value to be given to the testimony, and make our own findings of fact. In arriving at our decision it is our duty not to set aside the judgment unless it is clearly erroneous and we give due deference to the trial court's findings where proper. Supreme Court Rule 73.01(d), V.A.M.R.; Craft v. Politte, Mo.Sup., 454 S.W.2d 534[1]. On the question of deference, however, it is our view that where, as here, there is no conflict of consequence in the testimony, we need not attach much significance to that rule. Skatoff v. Solomon, Mo.App., 244 S.W.2d 590[9]; Farm Bureau Mut. Ins. Co. v. Farmers Mutual Automobile Ins. Co., Mo. App., 360 S.W.2d 325[2]; Day v. Blackbird, Mo.Sup., 331 S.W.2d 658[2]. We also note that the burden was on respondent to prove facts which would make the quoted policy exclusion provision applicable.

There are two theories, supported by the evidence in this case, under which it may be said that appellants were not members of the household of Seth Ward within the meaning of the exclusion clause before us. One theory is that the residence of appellants in Seth's home was merely temporary. Such was the holding on similar facts in the cases of Giokaris v. Kincaid, Mo.Sup., 331 S.W.2d 633, and Lumbermens Mutual Casualty Co. v. Pulsifer, D.C., 41 F.Supp. 249. The other theory is that even though appellants lived in the same house with Clifford's parents, they largely lived as a separate unit and could not be said to be members of Seth's household. Examples of that theory are Hoff v. Hoff, 132 Pa.Super. 431, 1 A.2d 506, and Jackson v. State Farm Mutual Automobile Ins. Co., La.App., 32 So.2d 52.

Webster's Third New International Dictionary defines "household" as "those who dwell under the same roof and compose a family." "Family" is defined as "the body of persons who live in one house and under one head including parents, children, servants, and lodgers * * *."

 We find as a fact and accordingly rule that Mark and Clifford were not members of Seth's household, at the time of Mark's injury, within the meaning of the exclusionary provision in question. We reach this conclusion primarily upon the basis that their stay in Seth's home was temporary. The Giokaris case established the rule in this state to the effect that if a relative lives in the home on a temporary basis he does not become a member of the household within the meaning of a provision such as the one before us. That case contains an extensive discussion of the question and cites a number of cases, including Pulsifer, supra. We have decided, however, that it would serve no useful purpose to discuss the Giokaris case in detail or to quote portions thereof. It is sufficient to say that it settles a legal proposition which we consider decisive of the case at bar.

The Pulsifer case involves a factual situation very similar to the one before us. The court there held the household exclusionary clause inapplicable on both of the theories heretofore mentioned. In so doing the court stated that "[w]hether the term 'household' or 'family' is used, the term embraces a collection of persons as a single group, with one head, living together, a unit of permanent and domestic character, under one roof; a 'collective body of persons living together within one curtilage, subsisting in common and directing their attention to a common object, the promotion of their mutual interests and social happiness.' Here two families came together temporarily until the newcomer could find another place of abode, which was expected to be a matter of only a few weeks. There was no one head of both groups; no permanence; no pursuit of a common object; no such union of the two families as would make them one. It was a temporary arrangement for the convenience of the son and his family while getting located elsewhere. Each family retained its own organization under its own head and did not merge to make one family or one household in any such way as the word is used in the policy." 41 F.Supp. 1. c. 251, 252.

All of the evidence here was to the effect that Clifford and Mark entered the home of Seth under a temporary arrangement. That testimony is stated heretofore and need not be repeated. They had been there only two months at the time of the accident and had moved away within a year. No doubt the expense and other difficulties resulting from Mark's injuries caused their stay to be longer than it otherwise would have been. The fact that Clifford stored, rather than sold, his furniture bolsters the conclusion that he intended to re-establish his home. Also, we note that he evidently desired to find a home where his two stepdaughters could live with him.

It should also be mentioned that the two families, to a large extent, as in Pulsifer, maintained their separate entities and did not merge into a single family unit or household as would have occurred if there had been an intent to form a permanent arrangement.

A consideration of both of the theories heretofore mentioned has caused us to conclude from the evidence, as heretofore stated, that Clifford and Mark were not members of Seth's "household" within the meaning of that word as used in the policy.

Respondent vigorously contends that the judgment of the trial court should not be reversed because it is not "clearly erroneous." Since we have concluded that the finding of the trial court was incorrect it necessarily follows that it was "clearly erroneous."

The conclusion we have reached makes it unnecessary to discuss appellants' second point.

The judgment is reversed and the cause remanded with directions to enter a declaratory judgment in accordance with the views herein expressed.

All concur.