Dear Representative Brockfeld:
You have requested our legal opinion on the following question:
 Can those households which would otherwise qualify for utilicare participation but in which the heating bill is in some other name actually participate and receive utilicare benefits?
Your question has reference to Senate Committee Substitute for House Committee Substitute for House Bills Nos. 545, 21 and 485, enacted by the First Regular Session of the 80th General Assembly, which mandated the establishment of a "utilicare" program by the Department of Social Services.
According to Section 2 of the bill:
 The department shall issue a `utilicare card' to every household which makes application in which the head of the household or spouse has attained the age of sixty-five and the income for the prior calendar year does not exceed $7,500.
Section 3 of the bill describes procedures for application for a utilicare card, and Section 4 describes how the holder of a utilicare card may sign up with the supplier of the primary heating source for the household requesting that the supplier bill the state's utilicare program for 50 percent of the household's heating bills for the months of December, January and February, but not to exceed $50 per month.
In your letter, you describe your particular concern as follows:
 The Division of Family Services estimates that in some areas of the state as many as 20% of the households in which the occupants are 65 or older will have the heating bill in some name other than that of the occupants. Usually this will be a member of the family of the occupants, most likely a child.
The bill does not define "head of the household," but in Missouri case law the word "household" is synonymous with "family."Giokaris v. Kincaid, 331 S.W.2d 633, 641 (Mo. 1960).
In Cobb v. State Security Ins. Co., 576 S.W.2d 726 (Mo. banc 1979), the court said at 738:
 In Mission Insurance Company v. Ward, 487 S.W.2d 449, 451 (Mo. banc 1972) `household' is defined as `those who dwell under the same roof and compose a family.' `Family' is defined as "the body of persons who live in one house and under one head including parents, children, servants, and lodgers . . .' [Citation omitted.]
 `Household' is a chameleon like word. The definition depends on the facts of each case. It is difficult to deduce any general principles.
The head of the household may have a legal or moral obligation to support one or more of the other members of the household or immediate family, such as under Missouri's homestead laws. State
v. Haney, 277 S.W.2d 632, 636 (Mo. 1955). However, this obligation would not preclude the head of the household from receiving assistance, either partially or totally, from sources outside the household or immediate family in obtaining and paying for essential utility services for the household.
Such assistance could come from a number of sources, including members of the family living outside the household, or a governmental program such as the "utilicare" program of the Missouri Department of Social Services.
The bill finally enacted by the General Assembly provides for a program of financial assistance to elderly households for the payment of charges for the primary heating source for the household.
The only requirements for eligibility of a household to receive a "utilicare card," and thus be eligible for participation in the utilicare program, are:
 1. The head of the household or spouse has attained the age of 65, and
 2. The income of the household for the prior calendar year does not exceed $7,500.
The bill provides that every household which makes application for a utilicare card, in which the above two requirements of eligibility are met, shall be issued a utilicare card.
It is noteworthy that the General Assembly did not impose any exception in the law that would exempt from participation in the utilicare program any household in which the primary heating utility service was listed or contracted for in the name of someone not a member of the household. Specifically, sections 3 and 4 of the bill require only the participation of the household and the supplier of the primary heating utility service in procedures for application for a utilicare card and in procedures for requesting payment by the state's utilicare program.
Section 3 provides for issuance of a utilicare card to any applicant of a household who submits proof of age and income qualifications. It does not require that the primary heating utility service be in the name of the applicant for the utilicare card, nor does it require that anyone other than a member of the eligible household in whose name the utility service might be listed must join in the application.
Section 4 provides for procedures whereby a cardholder can request the supplier to bill the state's utilicare program for 50 percent of the householder's primary heating bills for December, January and February (but not more than $50 per month). Forms requesting state payment of the bills must be signed only by the cardholder and by the supplier. Again, there is no requirement that anyone other than a member of the eligible household be involved in signing up for participation in the utilicare program.
It is our view that the intent of the General Assembly was not to exclude any elderly household from participation in the utilicare program where the above age and income qualifications were met. It is also our view that only by establishing objective and easily ascertained qualifying standards can such a program be workable. Under the draftsmanship of the present bill there can be little if any doubt as to the eligibility of a qualifying household to participate in the program.
To impose a requirement that the utility service must be billed in the name of a member of the household and not in the name of someone outside the household could pose problems perhaps not envisioned by those who seek universal application of provisions of the bill to low income elderly families.
There are several reasons utility services could be billed to someone other than a member of the household receiving the utility service. One is that the household lacks the financial resources to pay the bill. Another could be that although the household has resources to pay the bill, its members lack capacity due to problems of age or illness to handle their own affairs and obligations. In the latter instance for example, it could be more convenient for another person outside the family to handle such affairs and imposition of a requirement that a member of the household must be billed for such services could deprive that household from participation in the program.
In conclusion, it is our view that it is immaterial to the purpose of the utilicare bill whether the service is in the name of someone outside the household. That portion of the bill not paid by the state under "utilicare" would still be due and owing to the utility by the person in whose name the service was listed or contracted for, whether that person be a household member or someone outside the household. The obvious intent of the bill was thatall households in which the head of the household or spouse has attained the age of 65 and whose income for the prior calendar year does not exceed $7,500 should be eligible to participate in the utilicare program. The obvious intent of the General Assembly in enacting this bill was to remove the burden of payment of utility bills from elderly persons with low income who could not afford to pay them themselves and who might be forced to seek assistance from other members of their family living outside the household who could thus be doubly burdened with payment of utility bills.
Very truly yours,
 JOHN ASHCROFT Attorney General