**COLUMBIA MUTUAL INSURANCE COMPANY, Respondent,**

v.

**Dawn NEAL, Appellant.**

**No. 74163.**

Missouri Court of Appeals,
Eastern District,
Division Four.

March 2, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 5, 1999.

Application to Transfer Denied
June 29, 1999.

---

Joan M. Tanner, Gray & Ritter, P.C., St. Louis, for appellant.

Joan B. Bernstein, Gerre Langton, Evans & Dixon, L.L.C., St. Louis, for respondent.

GARY M. GAERTNER, Judge.

Appellant, Dawn Neal ("mother"), appeals the summary judgment entered by the Circuit Court of Jefferson County in favor of respondent, Columbia Mutual Insurance Company ("Columbia"), in its action seeking a declaration that Columbia's motor vehicle and household exclusions preclude coverage under its homeowners' policy. We reverse in part and remand in part.

On August 12, 1993, David A. Swan ("decedent"), mother's two-year-old son, was killed when James Cave ("Cave"), backed a vehicle owned by decedent's grandparents, Cecil and Sheila Cave ("grandparents"), over decedent. The accident occurred on grandparents' property.

On November 12, 1995, mother filed a petition for damages for wrongful death against grandparents and Cave. Count I against Cave alleged decedent was killed as a result of Cave's negligence in the operation of the 1983 GMC vehicle owned by grandparents. Count II against grandparents alleged they were negligent in the supervision of decedent.

On September 5, 1997 the wrongful death action was settled and the settlement was approved by the Circuit Court of Jefferson County. The claim against the driver, Cave, was settled for $25,000, the policy limit of the Hawkeye Security Insurance Company policy of automobile insurance on the vehicle. The claim against grandparents was settled for $100,000 with an agreement that, pursuant to statute, satisfaction of that judgment would be had only through the proceeds of the Columbia Mutual Insurance Company homeowners' policy issued to grandparents. Columbia provided a defense to grandparents in the wrongful death action filed by mother, under a reservation of rights, but grandparents dismissed Columbia's attorney and

entered into the settlement agreement, described above, with mother.

On May 13, 1996, Columbia filed its petition for declaratory judgment seeking the declaration that the motor vehicle and household exclusions preclude recovery under the homeowners' policy issued by them to grandparents. On November 17, 1997, following discovery, Columbia filed a motion for summary judgment. Mother filed a response to the motion, wherein she admitted certain undisputed facts. The following are some of the facts the parties agree to. Decedent was born on April 12, 1991. Decedent and mother lived with grandparents from decedent's birth until the summer of 1991, during the fall and winter of 1991–92, and from the summer of 1992 until June of 1993. Mother had moved out of grandparents' house on three separate occasions, taking decedent with her each time. For the two months prior to decedent's death, he was staying with grandparents while mother was living in St. Louis and looking for a job. Decedent apparently slept in grandparents' bedroom. The arrangement, as understood by mother, was that decedent would stay with grandparents for an undetermined period of time until mother obtained employment in St. Louis. Grandmother does not recall the arrangement. Nobody disputes the fact mother could take decedent at any time. AFDC checks and food stamps for decedent were mailed to grandparents except for the periods of the summer of 1991 and spring and summer of 1992. It appears from the record that mother signed over the AFDC checks to grandparents. Based on statements from grandfather, decedent was not claimed as a dependent on their tax returns.

The parties also agree that on August 12, 1993, the date of the accident, there was in effect Homeowners' Policy No. HO100194, issued by Columbia to grandparents, which provided liability insurance with limits of $100,000 per occurrence and medical payments coverage with limits of $1,000. The homeowners' insurance policy provides for the following liability coverages:

COVERAGE E – Personal Liability

If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence to which this insurance applies, we will:

1. pay up to our limit of liability for damages for which the insured is legally liable; and

2. provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent.

COVERAGE F – Medical Payments to Others

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing bodily injury. * * * This coverage does not apply to you or regular residents of your household. . . .

The homeowners' policy defines the relevant terms printed in bold.

1. **"bodily injury"** means bodily harm, sickness or disease, including required care, loss of services, and death that results.

3. **"insured"** means you and residents of your household who are:

   a. your relatives; or

   b. other persons under the age 21 and in the care of any person named above.

5. **"occurrence"** means an accident including exposure to conditions, which results, during the policy period in:

   a. bodily injury; or

   b. property damage.

The homeowners' policy excludes coverage for the following:

1. Coverage E – Personal Liability and Coverage F – Medical Payments to Others do not apply to bodily injury
   . . .

   e. arising out of:

(1) the ownership, maintenance, use, loading or unloading of motor vehicles ... owned or operated by or rented or loaned to an insured;

(2) the entrustment by an insured of a motor vehicle ... to any person; ...

2. Coverage E – Personal Liability does not apply to:

f. bodily injury to you or an insured within the meaning of Part a. or b. of "insured" as defined.

3. Coverage F – Medical Payments to others does not apply to bodily injury:

d. to any person other than a residence employee of an insured regularly residing on any part of the insured location.

Finally, the parties do not dispute that Cave, the driver of the vehicle that killed decedent, was not an insured under the homeowners' policy.

On March 24, 1998, the court granted Columbia's motion for summary judgment. In its conclusions of law, the court found the exclusion for liability coverage for bodily injury suffered by an insured was applicable because decedent was a resident of grandparents' household at the time of death, and the medical payments coverage was excluded for the same reason. The court also found the motor vehicle exclusion applied because the negligence of the grandparents in adequately supervising decedent was not independent of or divisible from the use of a motor vehicle. Mother filed a timely notice of appeal.

Mother raises two points on appeal. In her first point, mother contends the trial court erred in granting summary judgment in favor of Columbia on the basis that the automobile exclusion applies because mother's claim against grandparents is one for negligent supervision of a minor, which is independent of and distinct from the use of a vehicle. We agree with mother.

The standard of review of a summary judgment is de novo. *ITT Commercial Finance v. Mid–Am. Marine,* 854 S.W.2d 371, 376 (Mo.banc 1993). We "review the record in the light most favorable to the party against whom judgment was entered[,]" and accord that party the benefit of all inferences which may reasonably be drawn from the record. *Id.* A summary judgment order is proper if there is an absence of disputed issues of material fact and the movant has demonstrated that it is entitled to judgment as a matter of law. *Id.* at 380.

■ When an insurance company relies upon a policy exclusion to deny coverage, the burden is on the insurance company to prove the facts which make the exclusion applicable. *Harold S. Schwartz v. Continental Cas.,* 705 S.W.2d 494, 498 (Mo.App. E.D.1985); *Walters v. State Farm Mut. Auto. Ins.,* 793 S.W.2d 217, 219 (Mo.App. S.D.1990). When reviewing the policy, "[w]e will construe the exclusion clause strictly against the insurer." *Killian v. State Farm Fire and Cas. Co.,* 903 S.W.2d 215, 217 (Mo.App. W.D.1995). In *Killian,* the minor plaintiff was injured while driving a neighbor's moped. *Id.* The plaintiff sued the insureds for negligent supervision and negligent entrustment of the moped. The homeowners' policy specifically excluded claims for negligent supervision by any insured of any person and claims for negligent entrustment by any insured to any person. *Id.* at 218. Therefore, the court found there was no coverage based on the two explicit exclusions in the insureds' homeowners policy. *Id.*

In *Centermark Properties v. Home Indem.,* 897 S.W.2d 98, 101 (Mo.App. E.D. 1995), the court found coverage under a commercial general liability policy, specifically finding that the automobile exclusion did not apply to a claim of negligent supervision of the insured's employees. In *Centermark,* the negligent supervision and training of employees led to a third person stealing a vehicle off insured's lot and col-

liding with the injured party. The court found coverage based on the fact that there were "allegations of negligence that appear independent of ownership, maintenance, operation, or use of an automobile...." *Id.* at 101. Further, the court noted, "[I]t is widely accepted that where an insured risk and an excluded risk constitute concurrent proximate causes of an accident, a liability insurer is liable so long as one of the causes is covered by the policy."... *Id.* In finding the insurance company obligated to defend and indemnify because one of the causes of the accident was covered by the policy, the court noted, " ....while one proximate cause of the damage may have been the use of an automobile owned by Centermark, which was clearly excluded from coverage, a concurrent cause may have been Centermark's negligence in supervising and training employees, a covered risk." *Id.*

The *Centermark* court addressed other Missouri cases involving claims for negligent supervision. *Id.* at 101–02. One such case the court addressed was *American States Ins. v. Porterfield*, 844 S.W.2d 13 (Mo.App. W.D.1992). *Id.* In *Porterfield*, the insured's employee was driving a truck when the trailer became unhitched, struck and injured the plaintiffs. *Id.* at 14. Plaintiffs alleged insured had negligently supervised his employees in hitching the trailer, which, they contended, was a separate and concurrent cause of negligence that did not fall under the automobile exclusion of insured's policy. *Id.* at 15. The court in *Porterfield* denied coverage finding, "... the injuries arose out of the use of the truck and not from negligent supervision and therefore there is no coverage for any injuries arising out of the automobile accident." *Id.* at 16. In contrasting

its finding to that of the court in *Porterfield*, the *Centermark* court noted, "[h]ere, the ownership or use of an automobile is incidental, not an essential element of the negligence claim against insured." *Centermark*, 897 S.W.2d at 103.

Missouri courts have recognized negligent supervision of a minor as a viable cause of action.[1] In analyzing one such case, the court noted "[I]t is the obligation and ability to supervise and control the child, not the instrumentality that caused the harm, that is the decisive factor." *A.R.H. v. W.H.S.*, 876 S.W.2d 687, 689 (Mo.App. E.D.1994).

█ The cause of action stated against grandparents is a wrongful death action for negligent supervision of a minor. Missouri courts have addressed cases involving the negligent entrustment of a vehicle,[2] negligent supervision of the person operating a vehicle,[3] and negligent supervision of employees responsible for a vehicle,[4] but in this case, we have negligent supervision of the victim who was run over by a vehicle. The specific question as to whether the automobile exclusion applies in our situation is one of first impression in Missouri.

We find our case analogous to *Centermark*. In *Centermark*, the court found coverage because the ownership or use of the vehicle was incidental to the claim for negligent supervision.

The negligent supervision of the employees lead to a third party stealing a truck and injuring the plaintiff. Herein, the use of the vehicle was incidental to the claim for negligent supervision of the decedent who was run over by the vehicle. Missouri law states that in claims for negligent supervision, it is the obligation and ability to

---

1.  *See A.R.H. v. W.H.S.*, 876 S.W.2d 687 (Mo. App. E.D.1994) and *Rogger v. Voyles*, 797 S.W.2d 844 (Mo.App. S.D.1990).

2.  *See Shelter Mutual Ins. v. Politte*, 663 S.W.2d 777 (Mo.App. E.D.1983) and *Killian v. State Farm Fire & Cas. Co.*, 903 S.W.2d 215 (Mo.App. W.D.1995).

3.  *See Killian*, 903 S.W.2d 215.

4.  *See Hartford Cas. Ins. v. Budget Rent–A–Car*, 864 S.W.2d 5 (Mo.App. W.D.1993); *Centermark Properties v. Home Indem.*, 897 S.W.2d 98 (Mo.App. E.D.1995); and *American States Ins. v. Porterfield*, 844 S.W.2d 13 (Mo.App. W.D.1992).

supervise and control, not the instrumentality that caused the harm, that is decisive. In this case, it was the grandparents' obligation and ability to supervise and control decedent that are the decisive factors in the negligent supervision claim against them. The use of the vehicle that caused the harm is only incidental to the claim. The claim for negligent supervision of a minor is unrelated to and can occur without the use of a vehicle. Therefore, the exclusion for use of vehicle does not, as a matter of law, apply to the facts in this case.

Further, *Killian* illustrates that in a homeowners' policy, there are separate exclusionary clauses for negligent entrustment and negligent supervision. In *Killian*, a case involving a claim for negligent entrustment and negligent supervision, the court found no coverage, where the nine-year-old victim was injured while using the insured's moped, citing the insurance policy's two specific exclusions. In this case, we have a claim for negligent supervision, but the grandparents' homeowners policy only has a specific exclusion for the negligent entrustment of the vehicle. As we must construe the exclusionary clause strictly against the insurer, we find the absence of a specific exclusionary clause for negligent supervision, coupled with the fact that the use of the vehicle was only incidental to the claim, means such a claim is covered by the insurer.

Columbia urges us to follow the reasoning in *Hartford Cas. Ins. v. Budget Rent–A–Car*, 864 S.W.2d 5 (Mo.App. W.D.1993). We decline to do so. In *Hartford*, the insurer sought a declaratory judgment that its exclusionary clause applied to deny coverage in a collision between a motorist and insured's stolen shuttle bus. *Id.* at 6. The court of appeals affirmed the trial court's ruling that there was no coverage. The *Hartford* court stated explicitly that "[l]iability on the part of [insured] can only be founded on the ownership and use of the shuttle bus. It is these elements, ownership and use of the shuttle bus, which

are specifically excluded by the exclusionary clause." *Id.* at 7. The case at bar is distinct. As discussed above, in a claim for negligent supervision, the obligation and ability to supervise and control the child are the decisive factors in the claim. The liability of grandparents in this case will not be founded on the ownership and use of the vehicle that ran over decedent, but rather will focus on the aforementioned decisive factors.

■ In mother's second point on appeal, she alleges the trial court erred in granting summary judgment in favor of Columbia on the basis that the exclusion for an injury to a resident applied because the exclusion is ambiguous and because there is a genuine issue of fact as to whether decedent was a resident of his grandparents' household at the time of his death within the meaning of the policy exclusion. We agree with mother's latter contention.

We note again, "[t]o uphold a summary judgment we must be persuaded that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Pruitt v. Farmers Ins. Co.*, 950 S.W.2d 659, 665 (Mo.App. S.D.1997). We "review the record in the light most favorable to the party against whom judgment was entered," and accord that party the benefit of all inferences which may reasonably be drawn from the record. *ITT Commercial Finance v. Mid–Am. Marine*, 854 S.W.2d 371, 376 (Mo.banc 1993).

An insurance company, relying on an exclusion in a policy, has the burden of proving facts which make the exclusion applicable. *Harold S. Schwartz v. Continental Cas.*, 705 S.W.2d 494, 498 (Mo.App. E.D.1985). "Exclusion clauses in insurance policies are strictly construed against the insurer." *Walters v. State Farm Mut. Auto. Ins.*, 793 S.W.2d 217, 219 (Mo.App. S.D.1990). "[T]he meaning of the term 'resident' depends upon the purpose of the law where the word is employed and must be determined in each case." *Genrich v. Williams*, 869 S.W.2d 209, 211 (Mo.App.

E.D.1993). Further, the term "[h]ousehold is a chameleon like word." *Cobb v. State Sec. Ins. Co.*, 576 S.W.2d 726, 738 (Mo.banc.1979). "The definition depends on the facts of each case.... It is difficult to deduce any general principles." *Id.* "One theory examines the length of time the parties intended to remain in the home and whether the arrangement is permanent or temporary. The other theory focuses on the functional character of the arrangement or whether the parties function as a family unit under one management." *Id.*

In a Missouri case, construing the term "household" in an exclusion clause, the supreme court stated .... "the term embraces a collection of persons as a single group, with one head, living together, a unit of permanent and domestic character, under one roof; a 'collective body of persons living together within one curtilage, subsisting in common and directing their attention to a common object, the promotion of their mutual interests and social happiness.'" *Mission Insurance Company v. Ward*, 487 S.W.2d 449, 452 (Mo.banc. 1972). In *Ward*, the grandson was injured in a vehicle driven by grandfather. *Id.* at 450. Grandfather's automobile liability policy at issue excluded coverage for " .... any relative of the named insured who is a member of the named insured's household." *Id.* Grandson and son of grandfather lived with grandparents on a temporary basis until son could find an affordable place to rent of his own. *Id.* Son paid rent, shared the bathroom and kitchen with insured, occupied a bedroom of the house, had a telephone placed in his own name and when son was not home, grandson would eat meals with grandparents. Son testified " .... no specified time was stated for him to stay but he was constantly looking for a suitable place to rent at a reasonable rental[.]" *Id.* The court, in finding grandson was not a member of the household and therefore finding coverage under the insured's policy, found "[h]ere two families came together temporarily until the newcomer could find another place of abode...." *Id.* at 452. Further, "[I]t was a temporary arrangement for the convenience of the son and his family while getting located elsewhere." *Id.*

In a recent court of appeals case, the court was asked to determine whether the nephew of an insured, who was staying with his uncle for an indefinite period of time, was a resident of the household. *Pruitt v. Farmers Ins. Co.*, 950 S.W.2d 659, 665 (Mo.App. S.D.1997). *Pruitt* was an appeal of a summary judgment in favor of the insurer. In *Pruitt*, the nephew ("Jason"), who was seventeen years old, had traveled from his home in Texas to his aunt and uncle's home in Missouri in order to help haul hay. *Id.* at 661. He left Texas by plane on June 9, 1991, with the intent of staying in Missouri until the hay hauling was complete. Jason's round-trip ticket had him returning to Texas on July 12, 1991, but that date was chosen at random in order to obtain a cheaper fare. It was understood that Jason's return date could be changed. *Id.* The court of appeals found there was no dispute as to the fact Jason was an integrated part of his uncle's household. *Id.* at 665. The facts they examined included: Jason ate his meals with the family; was subject to the same discipline as his cousins; his clothes were washed with the family's; he slept in their home; his aunt and uncle gave him extra spending money; and he was generally treated like a member of the family. *Id.* However, the court went on to reverse and remand the case, finding a factual dispute as to the "permanency" of Jason's stay with the family. *Id.* The court noted that although Jason had a ticket to return to Texas on July 12 which would support the fact his stay was temporary, other evidence including the testimony the return date was open, indicated that Jason's stay in Missouri was "to some extent indefinite." *Id.* The court found that the dispute over these facts precluded the entry of summary judgment. *Id.*

In the case at bar, we are asked to determine whether decedent was a resident of his grandparents' household. As illustrated in *Pruitt* and *Ward,* the courts, faced with similar determinations, have examined whether the person had become an integrated part of the family and whether the person's stay was temporary. In our case, the issue of whether decedent's stay was temporary is factually in dispute. Mother had moved on three prior occasions, each time taking decedent with her. At the time of decedent's death, mother believed she and grandparents had an arrangement where grandparents would care for decedent until mother found a job in St. Louis. All parties agree that mother was free to take decedent whenever she wanted and mother had all ultimate decisions regarding decedent. However, grandparents do not recall an arrangement with mother, wherein mother would take decedent as soon as she found a job. Further, there are intimations in the record that mother and grandmother discussed the possibility of grandparents adopting decedent. The issue as to whether decedent's stay was a temporary one is in dispute and this factual dispute precludes a summary judgment.

The facts in the present case are also in dispute as to whether decedent was an integrated part of the family. The parties agree that mother supported the decedent by signing over the AFDC checks, as well as supplying some toys and clothing for decedent. Grandparents indicated they had numerous grandchildren who would often stay with them and that they had toys, clothing as well as eating utensils for all of their grandchildren at their home. Decedent slept in grandparents' room, indicating he had no room of his own. And although decedent ate with them, and grandparents took care of his day to day needs, there was evidence that grandmother did this with many of her grandchildren. Therefore, the facts are in dispute as to whether decedent was an integrated part of the family or just another grandchild spending some time with grandparents.

These factual disputes preclude summary judgment.

The judgment is reversed in part and the case is remanded to the trial court for further proceedings consistent with this opinion.

HOFF, P.J., and RHODES RUSSELL, J., concur.