Scott and Patricia SCHOETTGER,
et al., Appellants,

v.

AMERICAN NATIONAL PROPERTY
AND CASUALTY COMPANY, James
Petet, Jessica Petet and Timothy Pet-
et, Respondent.

No. WD 56829.

Missouri Court of Appeals,
Western District.

Jan. 25, 2000.

Timothy A. Toth, Independence, for ap-
pellants.

Robert A. Mintz, Overland Park, for re-
spondents.

Before JAMES M. SMART, Jr.,
Presiding Judge, JOSEPH M. ELLIS,
Judge and EDWIN H. SMITH, Judge.

JOSEPH M. ELLIS, Judge.

On August 18, 1993, Patricia and Scott Schoettger left their 23–month–old son, Michael, in the care of his regular day-care provider, Jessica Petet [1] at 7912 North Michigan in Kansas City. Petet ran a day care service in her home, Mrs. J's Day Care, caring for between 12 and 22 children at any given time, while holding a day-care license for a maximum of eight children. On August 18, 1993, there were 12 children in the home, supervised by Deanna Bailey, age 18, and Laura Bolton, age 17. Jessica Petet was not at home. While the children were napping in various parts of the house, Bailey had friends come in to visit. One of the visitors noticed that Michael Schoettger was missing. Michael had been sleeping in the basement on the lower level of the house. Bailey found the basement door cracked open, the gate to the swimming pool ajar, and Michael lying face down in the swimming pool. One of the visitors attempted CPR while emergency personnel were called. Michael was transported to North Kansas City Hospital where he was subsequently pronounced dead from drowning.

Michael's parents, Scott and Patricia Schoettger (the Schoettgers), brought an action in the Circuit Court of Clay County against Petet, her sons James and Timothy Petet,[2] and others for the wrongful death of their son.[3] At the time of the incident, Jessica Petet carried a liability policy of insurance on the property at 7912 North Michigan through American National Property and Casualty Company (ANPAC), which provided $300,000 coverage per occurrence.[4] ANPAC was placed on notice of the claim, and defended the action under a reservation of rights, citing the business pursuits exclusion, as well as misrepresentations and lack of cooperation by Petet. During the pendency of the underlying action, ANPAC filed a declaratory judgment action to determine its obligation under the policy,[5] to which the Schoettgers counterclaimed. The underlying action concluded before any determination of coverage was made in the declaratory judgment action. On December 10, 1997, a jury found in favor of the Schoettgers in the amount of $495,000 against Jessica Petet, $5,000 against James Petet, and $300,000 against Timothy Petet. ANPAC dismissed the declaratory judgment action without prejudice, and the Schoettgers dismissed their counterclaim in that action.

On February 24, 1998, the Schoettgers brought an equitable garnishment action against ANPAC pursuant to § 379.200,[6] alleging coverage under the policy.[7] On September 21, 1998, ANPAC filed a motion for summary judgment, which was granted. This appeal followed.

On appeal from the grant of a motion for summary judgment, our review is essentially *de novo*. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We view the record in the light most favorable to the party against whom summary judgment was taken. *Id.* The non-moving party is granted the benefit of all reasonable inferences from the record. *Berry v. American Family Mut. Ins. Co.*,

---

1. At some times relevant herein, Petet was known as Jessica Carroll.

2. Appellants allege in their brief that either James or Timothy Petet left the pool gate open or unlatched the previous evening. As we were only provided with select portions of the record, we are unable to determine if this allegation was substantiated.

3. *Schoettger v. Petet*, CV193–7702–CC, Circuit Court of Clay County, Missouri.

4. Reference to the ANPAC policy in issue is to the Elite Protection Package for the Homeowner, Form SH–7 (11–85).

5. *American National Property & Cas. Co. v. Petet*, CV194–933CC, Circuit Court of Clay County (1997).

6. All statutory references are to RSMo 1994 unless otherwise noted.

7. *Schoettger v. Petet*, CV198 1447CC (1998).

995 S.W.2d 16, 18 (Mo.App. W.D.1999). Summary judgment is only appropriate where the moving party demonstrates that no genuine issue of material fact exists, and the movant is entitled to a judgment as a matter of law. *Rule 74.04; Progressive Northwestern Ins. Co. v. Wilson,* 996 S.W.2d 532, 535 (Mo.App. W.D.1999).

■ In their sole point of error on appeal, the Schoettgers argue that the trial court erroneously granted summary judgment in favor of ANPAC, since the negligence of the Petets which caused Michael's death was incidental to non-business pursuits. Their argument is based upon essentially three subpoints. First, they contend that non-business pursuits contributing to Michael's death were (1) failure to inspect, lock and secure the gates leading to the swimming pool, (2) failure of James and Jessica Petet to supervise *their own* children during non-business time and (3) negligent entrustment of a key to the pool area to their minor child. The Schoettgers' position is that the loss arose from these factors and therefore should be covered under their policy.

■ Appellant argues that testimony at trial revealed Timothy Petet, a minor, had left the pool gate open or unlocked the night before this incident, while entertaining friends in the home. They contend that the Petets were negligent in (1) allowing Timothy to have a key to the pool gate, (2) failing to inspect and lock the gate leading to the pool and (3) failing to supervise their own children. Portions of deposition and trial testimony were submitted on appeal, presumably in support of this argument. However, the record is incomplete, contains only selected pages, and often reflects a witness's answer but not the question. We are unable to determine whether any of Appellants' arguments are substantiated by the record. Furthermore, the test for factual causation is whether the injury would not have occurred but for the defendant's conduct. *Sansonetti v. City of St. Joseph,*

976 S.W.2d 572, 577 (Mo.App. W.D.1998). Proximate cause also requires that the injury be a reasonable and probable consequence of the act or omission of the defendant. *Id.* The conduct argued by the Shoettgers, above, does not meet this test. Even if we were to assume, *arguendo,* that the record supported Appellants' argument, it would not establish that but for any of those factors, Michael would not have drowned, or that the incident was the reasonable and probable consequence of the acts of which they complained. The failure to supervise *Michael* was the proximate cause of his death, such supervision being an essential part of the day care operation.

■ The second part of the Schoettgers' argument is that the definition of "Home Day Care Services" in the insurance policy is ambiguous, did not apply to more than three children in the Petets' care, and therefore the activity of caring for children in the Petets' home was not a business pursuit. The Liability Coverages portion of the ANPAC homeowner's policy held by Petet at the time of the incident states, in pertinent part:

Section II   Exclusions

1.   Coverage E—Personal Liability and Coverage F—Medical Payments to Others do not apply to bodily injury or property damage:

b.   arising out of business pursuits of any insured....

The Definitions portion of the policy states:

2.   "business" includes:

a.   trade, profession, or occupation (which includes farming); and

b.   home day care services (which includes one to three children in your care at any one time, for which you receive any compensation). The following are not considered business pursuits:

(1) mutual exchange of home day care services; or

(2) providing home day care for a relative.

The Schoettgers point to the definition of "business" in the policy as being ambiguous, since it contains the term "includes" when describing home day care services. The Schoettgers argue that the phrase "which includes one to three children" limits home day care services to those which involve the care of *only* one, two or three children, and no more. Since Petet cared for between 12 and 22 children at any given time, they contend that the operation did not qualify as "home day care services," and therefore was not an excluded business pursuit under the policy.

The Schoettgers rely on *Rice v. Board of Adjustment of Village of Bel–Ridge,* 804 S.W.2d 821, 824 (Mo.App. E.D.1991) for the proposition that the word "including" is ambiguous, and reason that since the ANPAC policy uses the word "includes" in the definition of "business" and in the parenthetical after "home day care services," that the policy is ambiguous. This reasoning leads to their conclusion that we must then construe the policy to determine its meaning, that we must construe it against the insurance company, and accordingly hold that Petet's day care operation was not a "business" for purposes of the exclusion because she cared for more than three children. We disagree with the Schoettgers' reasoning and conclusions.

It is true that in *Rice,* a case involving interpretation of a zoning ordinance, the Eastern District of this court stated that "[t]he term 'including' is ambiguous..." *Rice,* 804 S.W.2d at 824. However, the complete text in which the statement was made must be read to understand what the court meant. The court stated: "The term 'including' is ambiguous, and its meaning may vary according to its context. Ordinarily, it is not a word of limitation, but rather of enlargement. 'When used in connection with a number of specified objects, it implies that there may be others which are not mentioned.'" *Id.* (*quoting*

*St. Louis County v. State Highway Comm'n,* 409 S.W.2d 149, 153 (Mo.1966)). Thus, while the word itself may be ambiguous, the context in which it is used generally clarifies and eliminates the ambiguity. And, as indicated by the *Rice* court, it usually is a word of enlargement rather than of limitation. So it is in the instant case.

■ An ambiguity arises in the context of an insurance policy when there is duplicity, indistinctness, or uncertainty as to the meaning of a particular word in the policy. *Rodriguez v. General Accident Ins. Co. of America,* 808 S.W.2d 379, 382 (Mo. banc 1991). To determine whether an insurance contract is ambiguous, words should be given their plain and reasonable meaning. *American Family Mut. Ins. Co. v. Moore,* 912 S.W.2d 531, 533 (Mo.App. W.D.1995). Policy language is ambiguous if it is reasonably open to different constructions. *Krombach v. Mayflower Ins. Co. Ltd.,* 827 S.W.2d 208, 210 (Mo. banc 1992). Where the terms of an insurance policy are unambiguous, the rules of construction do not apply, and absent public policy to the contrary, the policy will be enforced as written. *Id.* Courts will not create an ambiguity to distort the language of an unambiguous policy. *Id.*

In this case, if the business exclusion is read in context, it is clear that Petet's day care operations—implicitly if not expressly a day care center—caring for 12 to 22 children, was a "trade, profession or occupation," such as to constitute a "business" as defined in the policy, and would be understood to be a business by the average layperson. On the other hand, caring for only one to three children in one's home might not be viewed as the operation of a "business" by the hypothetical average layperson. Accordingly, the express inclusion of "home day care services," encompassing only one to three children, was intended to clarify that even those services

qualified as a "business" under the policy.[8] The use of the word "includes" in the parenthetical "which includes one to three children" is not ambiguous, and was clearly used as a word of enlargement denoting that "home day care services" qualifies as a business even if it is only one, two or three children. The business exclusion in the ANPAC policy is not ambiguous. Point denied.

Alternatively, the Schoettgers contend that where an insured risk and an excluded risk are concurrent proximate causes of an accident, the insurer should be liable if one cause is covered by the policy. They rely primarily on *Columbia Mut. Ins. Co. v. Neal*, 992 S.W.2d 204 (Mo.App. E.D. 1999) to argue that the failure of Timothy Petet to secure the pool gate, a covered cause, was separate from Jessica Petet's negligent supervision of children in her care, an excluded but incidental cause. As we have noted, *supra*, the portion of the record submitted does not support the Schoettgers' argument that Timothy Petet failed to secure the pool gate, or that his actions were the result of any failure on the part of Jessica Petet to supervise her son. However, even if, *arguendo*, the record contained support for the argument, the Schoettgers' reliance on *Neal* is misplaced. The *Neal* court found that the obligation and ability to supervise and control *(the decedent)* was controlling, not the instrumentality that caused the harm (a motor vehicle), and the failure to supervise the child was independent of the use of the vehicle. *Id.* at 208–09. However, the Schoettgers do not argue Petet's failure to supervise *Michael*, but rather the failure to supervise *Timothy*, their own son, contending that the independent instrumentality involved is the day care business. However, under the facts of this case, the failure to supervise pertains to the dece-

dent, Michael Schoettger, and the instrumentality involved in the incident was the Petet's swimming pool. Therefore, the court's holding in *Neal* does not apply to the Schoettgers' argument. Furthermore, *Neal* involved two concurrent *proximate* causes, whereas we have determined, *supra*, that the Schoettgers did not prove that any alleged failure to supervise Timothy was a proximate cause of Michael's death. Point denied.

The trial court's grant of summary judgment is affirmed.

All concur.

---

**8.** In this regard, we note that § 210.221 RSMo (Cum.Supp.1998) authorizes the Department of Health to license, inspect and investigate day care facilities, and is further granted authority to promulgate regulations pursuant thereto. Accordingly, the Depart-

ment adopted 19 CSR 30–62.042 relating to licensing authority, persons subject to licensure and the licensing process. The regulation requires that any person offering day care services to more than four (4) children must be licensed. 19 CSR 30–62.042(2)(A).