**FIDELITY AND CASUALTY COMPANY OF NEW YORK, Plaintiff,**

v.

**David LODWICK, individually and as natural parent, legal guardian and next friend of Michael Lodwick, a minor, and Hans L. Brain, Defendants.**

**No. 99–9034–CIV.**

United States District Court, S.D. Florida.

Dec. 26, 2000.

Wayne T. Gill, Walton, Lantaff, Schroeder & Carson, West Palm Beach, FL, for Plaintiff.

Gregory W. Coleman, Burman, Critton, Luttier & Coleman, Thomas J. Ali, Kramer, Ali, Fleck, Carothers & Hughs, North Palm Beach, FL, for Defendants.

### ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

HURLEY, District Judge.

**THIS CAUSE** is before the Court upon plaintiff Fidelity and Casualty Company of New York ("Fidelity")'s motion for summary judgment. [DE# 22]. Fidelity seeks a summary judgment declaring that it has no duty to defend or indemnify its insureds, David and Michael Lodwick, against negligence claims arising out of an automobile accident in which Hans L. Brain was injured. The question to be resolved by this motion is whether a claim for negligent supervision of a minor child involved as a driver in an automobile accident is covered by a homeowner's insurance policy that excludes claims for injuries arising out of the ownership or use of a motor vehicle.

### FACTUAL BACKGROUND

The defendant Hans L. Brain is the plaintiff in the underlying tort action filed in the Palm Beach County Circuit Court in and for Palm Beach County, Florida. In his original complaint, Brain asserted simple automobile negligence claims against David Lodwick and his minor son, Michael Lodwick, based upon negligent operation of an automobile owned by David Lodwick and operated with his consent by Michael Lodwick.

In his amended complaint, Brain added negligent entrustment claims against David Lodwick, as well as negligent supervision claims against both David Lodwick and his wife, Kathy Lodwick, alleging that their failure to properly monitor the activities of their minor child was the proximate cause of the automobile accident which injured Brain. More specifically, Brain alleged that prior to March 19, 1999 and through March, 19, 1999, the Lodwicks failed to exercise control over their minor child by ensuring that we was attending school on a regular basis, despite his known habit of playing "hooky" or "skipping school," and that the Lodwicks knew or should have known that injury to others was a foreseeable result of their failure to so properly supervise their son.

In a second amendment to the complaint, Brain expanded upon the allegations supporting the negligent supervision claim, contending that the Lodwicks knew that their son had a "habit and propensity

for driving [David Lodwick's] automobile while playing "hooky" or "skipping school" in a negligent and careless fashion due to his lack of age and judgment or experience." In a third amendment to the complaint, Brain further refined the negligent supervision claim again, now dropping the "hooky" allegations and alleging simply that the Lodwicks knew or should have known that their child had a propensity for speeding or otherwise driving automobiles in an impulsive and unsafe manner due to his lack of age and experience, and that their failure exercise appropriate control over him in light of that knowledge was a concurring cause of the automobile accident in question.

The Lodwicks forwarded the complaint and summons to Fidelity seeking a defense and indemnity under a combination policy which provides both motor vehicle coverage and homeowner's insurance coverage. Fidelity tendered the $100,000 automobile liability policy limits under the automobile coverage part to Brain, conditioned upon a full release of all claims against the insureds and Fidelity. Brain, in turn, demanded the $300,000 homeowner liability policy limits under the homeowner coverage part in addition to the $100,00 automobile liability limits, contending that the homeowner coverage extended to his negligent supervision and negligent entrustment claims.

Fidelity denied the homeowner claim, and ultimately filed this action seeking a declaration that it has no duty to defend or indemnify David or Michael Lodwick under the homeowner policy against any of the negligence claims lodged in the underlying state court suit. Fidelity now seeks summary judgment, maintaining that the material facts are not in dispute, and that it is entitled to judgment as a matter of law under application of a policy exclusion under the homeowner coverage for injuries "arising out of" the "ownership, maintenance, [or] use... of [a] motor vehicle..."[1]

In defending the motion, the insureds and Brain both concede that there is no coverage under the homeowner policy for the negligent entrustment claim, which is subject to a specific policy exclusion. However, they contend that the negligent supervision count is a covered claim because (1) there is no specific policy exclusion applicable to it, and general precepts of insurance policy construction require a strict construction of exclusionary language which favors the insured; and (2) the negligent supervision claim is based upon facts sufficiently independent of and unrelated to the negligent use of the automobile by the minor child, such that the parents might reasonably have expected to be protected by their homeowner policy in an action based upon those activities.

### THE POLICY

The homeowner coverage of the subject policy contains the following insuring clause:

**LIABILITY COVERAGE—HOME** (form 6–18533–A, page 15 of 22)

---

1. The plaintiff's motion for summary judgment is directed to Brain's first amended complaint filed in the underlying state court action. After Brain filed a second amended complaint in the state action expanding upon the negligent supervision claim, Fidelity filed an unopposed motion for leave to file a second amended complaint in this declaratory judgment proceeding addressed to that pleading [DE# 30], simultaneously requesting that the Court deem its earlier filed motion for summary judgment to apply to the second amendment to the underlying complaint. The Court previously allowed the filing of the second amended declaratory judgment complaint [DE # 33]. At the time of hearing upon the pending motion for summary judgment, the parties advised the court of yet a third amendment to the underlying tort complaint filed November 2, 2000 in the state court suit, and Fidelity has since filed a copy of that pleading in the court file in this case [DE# 39]. As the third amended complaint is now the operative pleading, and both parties directed their arguments to this pleading at the oral argument upon the pending motion for summary judgment, the court will deem the pending motion to be directed toward this most recent amendment to the pleadings.

Personal Liability—Insuring Agreement;

If a claim or suit is brought against you or any covered person for the following:

1) personal injury;

2) bodily injury; or

3) property damage,

caused by an occurrence to which this coverage applies, we will:

1. Pay on your behalf claims for which you or any covered person are legally liable, including prejudgment interest awarded against you or any covered person, up to our limit of liability; except as excluded by the provisions listed in the Liability Coverage–Losses We Do Not Cover. . . .

The exclusionary section of the homeowner policy, in turn, (pages 17–18) contains the following pertinent exclusions:

**LOSSES WE DO NOT COVER**

1. Personal Liability and Medical Expense Coverages do not apply to bodily injury or property damage:

   . . .

   c. Arising out of the ownership, maintenance, occupancy, renting, loaning, use entrusting, loading or unloading of any motor vehicles. . . .

   . . . . .

   i. Arising out of:

   (1) The entrustment by a covered person to any person; or,

   (2) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor;

of any water craft, motor vehicle or trailer which is not covered under Liability CoverageHome.

The coverage question presented here is whether Brain's negligent supervision claim against the Lodwick parents is one "arising out of the ownership, maintenance. . . [or] use .. of any motor vehicle" within the meaning of exclusion 1(c). For reasons more fully discussed below, the Court concludes, under the facts of this case, that the negligent supervision claim—which is based on an alleged failure to properly supervise and control the driving activities of a minor child with a known propensity for speeding and unsafe driving—is not independent of, but is inextricably intertwined with the minor child's use of the vehicle, such that any breach by the parents of their duty to supervise the child's use of the vehicle is necessarily deemed to "arise out of" it, thereby triggering application of the automobile exclusion.

### DISCUSSION

█ While there is no controlling Florida case authority directly on point, there is Florida precedent which generally recognizes that duplicate coverage for an automobile accident injury covered by an automobile policy is not ordinarily available simply by alleging the separate tort of negligence in hiring or supervising the negligent party, or by alleging negligence in entrusting the vehicle to the negligent party.[2]

However, there appears to be some disarray in the case law applications of this principle. Unlike the Fifth, Second and Third District Court of Appeals, the Florida Fourth District Court of Appeal has consistently recognized the potential avail-

**2.** *See e.g. Johnson v. Unigard Ins. Co.,* 387 So.2d 1058 (Fla. 5th DCA 1980)(homeowner's negligent entrustment of three-wheel power driven vehicle to plaintiff who was injured when he was unable to steer vehicle did not create an independent tort and therefore a separate basis for coverage under homeowner liability policy which excluded coverage for damages arising out of the operation or use of a motor vehicle); *Cesarini v. American Druggist Ins. Co.* 463 So.2d 451 (Fla. 2d DCA 1985)(auto exclusion applicable even though

plaintiff added allegation that defendant negligently hired and supervised the driver of the automobile and that his negligence was independent of driver's negligent in striking plaintiff); *Atkins v. Bellefonte Ins. Co.* 342 So.2d 837 (Fla. 3d DCA 1977)(plaintiff struck by auto owned by school and operated by school employee who was returning to premises with escaped minor could not avoid auto exclusion under general liability policy by alleging school was negligent in allowing minor to escape in first instance).

ability of duplicate coverages in situations where there are allegations of negligence which may be deemed independent of, and unrelated to the acts involving the negligent operation, maintenance, use, hiring, or supervision of the vehicle or its driver. *See e.g. Southern Adjustment Services, Inc. v. American Bankers Ins. Co. of Florida,* 723 So.2d 285 (Fla. 4th DCA 1998)(finding duty to defend under CGL policy for negligent hiring and supervision of employee whose negligent operation of auto resulted in injury to plaintiff); *Frontier Ins. Co. v. Pinecrest Preparatory School, Inc.,* 658 So.2d 601 (Fla. 4th DCA 1995)(acknowledging rule against overlapping coverages, but finding it inapplicable to case involving negligent supervision of injured child camper who fell from a trailer pulled by a pickup truck used as playground ride); *Smith v. General Acc. Ins. Co. of America,* 641 So.2d 123 (Fla. 4th DCA 1994)(finding duty to defend under general liability policy based on allegations of negligent hiring of taxi cab driver).

In doing so, the Fourth District has acknowledged conflict with the Third District, which in *Atkins v. Bellefonte Ins. Co.,* 342 So.2d 837 (Fla.3d DCA 1977), articulated a "but for" analytical approach in defining causation issues pertinent to interpretation of the this exclusionary language. In *Atkins,* the court was confronted with the same exclusionary clause when considering an injury which resulted from a collision involving two vehicles. The defendant school was sued not because the improper operation of the vehicle allegedly caused the collision (an excluded act), but because the school was allegedly negligent in allowing a minor to escape from the school in the first instance, thus requiring that the vehicle be used to retrieve the child. In finding the auto exclusion applicable, the court observed that the injury would not have resulted "but for" the use of the school's vehicle, and that the rea-

sons which explained how and why the vehicle came to the place of the accident were not a legal cause of it. *See also Gargano v. Liberty Mutual Ins. Co.,* 384 So.2d 220 (Fla. 3d DCA 1980)(no coverage for independent act of negligent entrustment of vehicle to a minor child, finding that entrustment necessarily arose out of ownership operation or use of vehicle within meaning of the exclusionary clause of homeowner policy). The Fifth and Second District Court of Appeals have followed the *Atkins* approach. *See e.g. Hagen v. Aetna Cas. & Surety Co.,* 675 So.2d 963 (Fla. 5th DCA 1996)(*en banc*)(injury caused by roll of carpet pulled from delivery van arose out of use of auto and was excluded from coverage under CGL policy, since use of vehicle was not merely incidental to injury); *Tomlinson v. State Farm Fire & Casualty Co.,* 579 So.2d 211 (Fla. 2d DCA 1991)(no coverage under homeowner policy for alleged negligent supervision of minor child whose alleged negligent operation of a motorcycle caused death of a third party).[3] *Compare Scarlett O'Hara's Inc. v. Sphere Drake Ins. Co.,* 715 So.2d 317 (Fla. 5th DCA 1998)(policy exclusion for giving alcoholic beverage to a minor precluded coverage for auto injury notwithstanding alleged independent negligent act of giving intoxicated minor access to his own vehicle).

The divergent approach followed by the Fourth District—although not expressly articulated as such—engrafts concurrent causation concepts into policy construction of the "arising out of" language of the auto exclusion. Application of these concepts is not entirely novel to Florida insurance policy construction, *see e.g. Wallach v. Rosenberg,* 527 So.2d 1386, 1387 (Fla. 3d DCA) ("jury may find coverage where an insured risk constitutes a concurrent cause of the loss even where 'the insured risk [is] not. . . the prime or efficient cause of the accident' ")(*quoting* 11 G. Couch, *Couch on*

---

**3.** Other jurisdictions following this approach have theorized that the motor vehicle exclusion is "not based upon the theory of liability inherent in a claim. Rather, the policy is said to not apply to any claim regardless of the

theory of liability when that claim is for bodily injury arising out of operation of any motor vehicle owned by the insured." *See American Universal Ins. Co. v. Cummings,* 475 A.2d 1136, 1137 (Me.1984).

*Insurance 2d* § 44:268 (rev. ed.1982), *rev. denied,* 536 So.2d 246 (Fla.1988)), and has been explicitly accomplished by sister jurisdictions interpreting similar exclusionary language. *See Kalell v. Mutual Fire & Auto. Ins. Co.,* 471 N.W.2d 865 (Iowa 1991)(where two independent acts of negligence are alleged, one vehicle related and one non vehicle related, coverage affords under homeowner policy unless the vehicle related negligence is the sole proximate cause of the injury).

■ This court accepts the concurrent causation approach as the better reasoned analytical framework for determining the exclusionary policy construction issue posed; however, its application to the facts of this case does not result in a finding of coverage because the court does not believe that the Lodwick parents' alleged failure to better supervise their minor child by "ensuring" that he operate the vehicle in a safe fashion or controlling his

access to the vehicle in light of his known unsafe driving propensities (which is the essence of the negligent supervision claim as it is currently pled) [4] is an independent tort which avoids a policy exclusion.[5] Rather, under the facts of this case, this omission or failure is instead synonymous with a negligent entrustment of the vehicle, which is an expressly excluded risk.

■ For these reasons, the court rejects the insureds and claimant's alternative theories of coverage premised upon (1) strict construction of exclusionary language and (2) concurrent causation concepts. In reaching this conclusion, the court is mindful of its obligation to liberally construe any doubts as to coverage in favor of the insured, and recognizes that this is particularly true where, as here, the insurer seeks to avoid coverage based upon an exclusion in the policy. *Allstate Ins. Co. v. Shofner,* 573 So.2d 47 (Fla. 1st DCA 1990). In line with this philosophy,

---

4. In Brain's fourth amendment to complaint, para. 26, he alleges that the parents failed to exercise control over a minor child that they knew to have a habit of driving the automobile in a negligent and careless fashion. Further, he alleges the mother permitted the child to obtain a minor's driver license, knowing that he would use the auto entrusted to him, and knowing of his propensity for impulsive and unsafe driving habits. While difficult to follow, liberally read this "negligent supervision" claim is at heart a "negligent entrustment" claim, as it is premised on the notion that parent's failure to limit or control their son's access to a vehicle was negligent in light of his known driving habits, an allegation which, in essence, is simply a restatement of the negligent entrustment claim.

5. In their effort to demonstrate the existence of an independent tort necessary to trigger duplicate coverages, the insureds and claimant rely heavily upon *Columbia Mutual Ins. Co. v. Neal,* 992 S.W.2d 204 (Mo.App.1999). In *Neal,* a parent of a deceased minor sued the child's grandparents alleging that they were negligent in the supervision of their grandchild who was hit by an automobile negligently operated by a third party. The Missouri court found the negligent supervision claim covered under the insured's homeowner policy on the theory that it was the grandparents ability and obligation to control and supervise the activities of the minor child, and not the instrumentality that caused the

harm, which was the dispositive factor in determining coverage, noting the absence of a specific exclusion for a negligent supervision claim. The *Neal* case appears to embody an application of concurrent causation concepts to the policy construction issue posed, albeit not expressly articulated as such. However, like the Florida Fourth District Court of Appeal's *Frontier* case cited *supra, Neal* is inapposite to the facts of the instant case where the negligent supervision claim revolves around allegations of failure to control the allegedly negligent tortfeasor/driver—not the injured plaintiff/victim. In this scenario, the failure to supervise claim is not independent or unrelated to the negligent operation of the vehicle—it is inextricably intertwined with it. Of significant note, Missouri courts subsequently interpreting and applying *Neal* have not extended it to instances where failure to supervise is related to control over the tortfeasor, apparently upon related proximate causation problems. *See e.g. Schoettger v. American National Property and Casualty Co.,* 10 S.W.3d 566, 570 (Mo.Ct.App.2000) (distinguishing *Neal* on ground it involved two concurrent proximate causes, with failure to supervise injured victim as one of them; in the case at bar, in contrast, plaintiffs did not prove alleged failure to supervise the minor tortfeasor involved in swimming pool death was a proximate cause of the injury).

exclusionary clauses that are ambiguous or otherwise susceptible of more than one meaning must be construed in favor of the insured. *State Farm v. Pridgen,* 498 So.2d 1245 (Fla.1986). However, this rule governing policy ambiguities applies only when a genuine inconsistency, uncertainty or ambiguity in meaning remains after resort to ordinary rules of construction: It does not allow courts to rewrite insurance contracts, add meaning that is not present, or otherwise reach results contrary to the manifest intention of the partes. *See e.g. Marriott Corp. v. Travelers Indemn. Co,* 473 So.2d 281 (Fla. 1st DCA 1985).

Cognizant of the interplay of these principles here, the court finds the exclusionary language at issue clear on its face and declines to hold that the insurer's omission of negligent supervision claims from the list of excluded actions enumerated within the "auto" exclusion creates any ambiguity concerning the coverages extended. It therefore finds no basis to invoke the general precept of policy construction governing interpretation of policy ambiguities and finds the negligence supervision claim expressly excluded.[6] Moreover, the court does not find that the negligent supervision claim is an independent tort which avoids the auto exclusion under the facts of this case where the failure to supervise is, in essence, premised upon notions of negligent entrustment—an expressly excluded risk under the policy.

In light of the clear applicability of the auto exclusion to the negligent supervision

claim as pled in Brain's fourth amended complaint, Fidelity owed no duty to defend or indemnify the Lodwicks on this claim, and the court will enter final summary judgment in favor of the insurer accordingly. *See e.g. Amerisure Ins. Co. v. Gold Coast Marine Distributors, Inc.,* 771 So.2d 579, 2000 WL 1629442 (Fla. 4th DCA Case No. 4D00–145, opinion filed Nov. 1, 2000)(insurer owed no duty to defend despite conclusory "buzz words," i.e. "defamation" and "damage to reputation" inserted in complaint in effort to trigger coverage).

Accordingly, it is

**ORDERED and ADJUDGED:**

1. The plaintiff's motion for summary judgment [DE# 22] is **GRANTED.**

2. Final summary declaratory judgment is herewith entered in favor of plaintiff Fidelity and Casualty Company of New York and against defendants David Lodwick, Michael Lodwick and Hans L. Brain. The court holds that Fidelity owes no duty to defend or indemnify Michael or David Lodwick against the negligent supervision claim asserted in Brain's fourth amended complaint in the underlying state tort action.

3. The clerk of court shall **CLOSE** this case and deny all pending motions as **MOOT** [DE# 23, 38].

---

**6.** *But see Pablo v. Moore,* 298 Mont. 393, 995 P.2d 460 (2000)(finding undefined term "arising out of" to be ambiguous as used in automobile and mobile equipment exclusions, and concluding that it did not exclude damages for negligent hiring, training, and supervision of vehicle driver).